The STATE of Ohio, Appellee,

v.

ADARANIJO, Appellant.

[Cite as *State v. Adaranijo,* 153 Ohio App.3d 266, 2003-Ohio-3822.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–020499.

Decided July 18, 2003.

Ernest F. McAdams Jr., Cincinnati Prosecuting Attorney, and James L. Johnson, Assistant Prosecuting Attorney, for appellee.

Bruce K. Hust, for appellant.

MARK P. PAINTER, Judge.

{¶ 1} Courts should be slow to intervene between parent and child. The criminal court is not the place to resolve petty issues of discipline. The domestic violence laws are meant to protect against abuse, not to punish parental discipline.

{¶ 2} Defendant-appellant, Matthew Adaranijo, appeals his conviction for domestic violence.[1] Adaranijo was accused of hitting his teen-age daughter and of threatening to "beat the shit" out of her. After a bench trial, the trial court found Adaranijo guilty. We reverse.

## A Slap and a "Threat"

{¶ 3} One evening, Adaranijo's 13–year–old daughter, Sade, wrote a paper for school. While Sade was sleeping, Adaranijo made corrections on the paper. The next morning, March 5, 2002, while Adaranijo drove Sade to school, they reviewed the paper. Sade was not pleased with some of the changes that her father had made.

{¶ 4} Sade testified that as she pointed out her displeasure with the revised paper, Adaranijo became angry. When she stopped reading the paper aloud, Adaranijo allegedly slapped Sade on the left side of her face and said, "[S]top contradicting this paper." He told her, "If you contradict the paper that I corrected for you one more time, I will beat the shit out of you." When she did not continue reading, Adaranijo said, "That's it," and told Sade, "I am going to take you somewhere nice and quiet and I am going to beat the shit out of you."

{¶ 5} But Adaranijo took Sade to school, and when she hesitated to get out of the car, he hit her on the thigh to encourage her. Sade testified that she limped into school and went to the cafeteria to get some ice for her leg. She did not tell anyone what had happened. A few days later, Sade went to her mother's for the weekend. (Adaranijo had custody of Sade, and the mother had visitation privileges). She told her mother about the incident. The mother immediately took Sade to a police station to file charges, but Sade refused to go in. Later, after an unrelated dispute with Adaranijo, the mother called the police and told them about the previous incident with Sade. This charge was then filed.

{¶ 6} Adaranijo testified that on the morning of March 5, Sade was not in a good mood and was pouting. This was because he had told her that he was going to return some new clothes that he had purchased for her, due to her poor behavior. Adaranijo testified that Sade was also not pleased with the changes that he had made in the paper, but that he did not get angry. When they arrived

---

1. R.C. 2919.25(A).

at the school, he put the paper in her folder and tapped her on the leg with it, shooing her out of the car so that she would not be late. Adaranijo denied that he had slapped or punched his daughter or had threatened to do so.

## The Appeal

{¶ 7} Adaranijo now brings two assignments of error, one through his counsel and one pro se. Through his counsel, Adaranijo argues that his conviction was against the manifest weight of the evidence. A challenge to the weight of the evidence attacks the credibility of the evidence presented.[2]

{¶ 8} The Ohio Supreme Court has made it clear that a challenge to the weight of the evidence is distinct from a challenge to the sufficiency of the evidence.[3] In reversing Adaranijo's conviction, we have recast his assignment of error brought through counsel to reflect what we believe to be the more fundamental issue underlying this case: whether Adaranijo's conviction was supported by sufficient evidence. If the evidence, construed in favor of the state, is insufficient to support a conviction, then no interpretation of the facts of the case will support a conviction. Therefore, if a court determines, as a matter of law, that the evidence is insufficient, the issue of whether the conviction is against the manifest weight of the evidence becomes moot.

## Not a Crime

{¶ 9} In this case, Adaranijo had helped his daughter with her homework, but she was not pleased and objected to what he had done. With the facts construed in favor of the state, Adaranijo slapped Sade, threatened to beat her, and then punched her in the leg as she left the car. As to the threat to "beat the shit" out of his child—a threat he obviously did not carry out— we surmise that it was rhetorical only. Should we jail every parent for such a threat? Were these words made criminal, who would be free? Ralph Kramden, who was never known to hit anyone, would be in jail forever.[4]

{¶ 10} In this case, we hold that as a matter of law, the evidence was insufficient. There was simply no evidence to indicate that Adaranijo's actions exceeded those within his rights under the law of parental discipline. It does not matter whose version of the facts we believe—even with the facts construed as most damaging to Adaranijo—he did not commit domestic violence.

---

2. See *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541.

3. Id. at 386, 678 N.E.2d 541.

4. *State v. Asher* (1996), 112 Ohio App.3d 646, 656, 679 N.E.2d 1147 (Painter, J., concurring).

## A Parent May Discipline a Child

{¶ 11} A parent has a fundamental liberty interest in raising and controlling his or her children.[5] "Indeed, that parental right is among those *inalienable* rights secured by natural law which Article I, Section 1 of the Ohio Constitution was intended to protect from infringement by the police power of the state."[6] Of course, the state has a legitimate interest in protecting children from harm, so domestic-violence laws can apply between parent and child. But not in this case.

{¶ 12} The Ohio Supreme Court has held that nothing in the domestic-violence statute prevents a parent from properly disciplining his or her child.[7] The only prohibition is that a parent may not cause "physical harm," which is defined as "any injury."[8] "Injury" is defined in Black's Law Dictionary as "the invasion of any legally protected interest of another."[9] A child does not have any legally protected interest that is invaded by proper and reasonable parental discipline.[10] Thus, as any corporal punishment necessarily involves some physical harm, the harm required to constitute domestic violence must be greater than that here. At least one court has held that, to rise above parental discipline and become domestic violence, the parent's act must create "a risk of death, serious injury, or substantial pain."[11] None of that was present here.

{¶ 13} A parent may use corporal punishment as a method of discipline without violating the domestic-violence statute as long as the discipline is proper and reasonable under the circumstances.[12] Here, there was no observable injury. We are convinced that, without observable injury, or without risk of serious physical harm, there can be no domestic-violence conviction for a parent as a result of striking a child.[13] Though reasonable parental discipline is an affirma-

---

5. See *State v. Hause* (Aug. 6, 1999), 2nd Dist. No. 17614, 1999 WL 959184, citing *Santosky v. Kramer* (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599.

6. See *State v. Hause*, supra. (Emphasis sic.)

7. See *State v. Suchomski* (1991), 58 Ohio St.3d 74, 75, 567 N.E.2d 1304.

8. Id.

9. Id., citing Black's Law Dictionary (6 Ed.Rev.1990) 785.

10. See *State v. Suchomski*, supra, at 75, 567 N.E.2d 1304.

11. See *State v. Hause*, supra. See, also, *Samples v. Cruz* (May 17, 2001), 8th Dist. No. 78122, 2001 WL 534165.

12. See *State v. Wagster* (Mar. 27, 1996), 1st Dist. No. 950584, 1996 WL 134538.

13. See, e.g., *State v. Holzwart*, 151 Ohio App.3d 417, 420, 2003-Ohio-345, 784 N.E.2d 192.

tive defense, here the evidence not only manifestly raised the defense, it proved it. Therefore, the trial court erred in finding Adaranijo guilty.

{¶ 14} Taking into account all the facts and circumstances in this case, we hold that the discipline administered by Adaranijo to Sade was not domestic violence. While many people differ as to whether corporal discipline should be used, it is not the business of the courts unless the child is injured. Therefore, we hold that, as a matter of law, Adaranijo's actions did not rise to a level exceeding reasonable parental discipline and, therefore, the evidence to convict Adaranijo of domestic violence was insufficient. Because the evidence was insufficient, we must reverse Adaranijo's conviction and discharge him from further prosecution.

### The Pro–Se Assignment

{¶ 15} Adaranijo, acting pro se, asserts that the trial court erred by excluding evidence of prior false charges of domestic violence. While Adaranijo offers no argument in support of this claim, his statement of the error includes a reference to two pages in the transcript of the trial. Those pages involve the testimony of Cincinnati Police Officer Tanya Cook.

{¶ 16} Officer Cook, a witness for the defense, testified that she was called to a domestic dispute involving Adaranijo and his former wife, June Hill, on March 30, 2002. When defense counsel asked Officer Cook to state the allegation concerning the family dispute, the state objected. The court asked defense counsel about the purpose for offering such testimony, and counsel responded, "I think it will show this was an ongoing pattern with the mother, June Hill. She calls and files false charges against my client." The court allowed defense counsel to proceed only in an effort to establish that the March 30 call to the police had nothing to do with the March 5 incident in the car between Adaranijo and Sade.

{¶ 17} Because of our ruling on the assignment raised by counsel, this issue is now moot, and we need not address it. The judgment of the trial court is, accordingly, reversed, and Adaranijo is discharged from further prosecution.

Judgment reversed
and appellant discharged.

HILDEBRANDT, P.J., and GORMAN, J., concur.