OPINION
{¶ 1} Defendant, Judson Thompson, III, appeals from his conviction and sentence for domestic violence.
 {¶ 2} Defendant lives on a family farm with his parents, his ex-wife, his son and two stepdaughters, Tanya and Caroline Albright. Defendant stands in loco parentis with respect to his two stepdaughters and he has been actively involved for several years in raising them. At the time of this incident, Tanya was sixteen and a student at Newton High School. Tanya has a tutor for some of her classes because she is a slow learner and has trouble keeping up.
 {¶ 3} Tanya and her sister Caroline both have chores they are expected to perform each morning before going to school. Tanya is sometimes late in completing her chores, and that was apparently the situation on the morning of May 20, 2004. Defendant observed that Tanya was not doing the specific chores he had asked her to do. Defendant approached to within an arm's length of Tanya and he yelled at her, trying to get her moving. He also called her names. While scolding Tanya, Defendant held a piece of tin metal in his hand that he pointed at Tanya in order to "make his point" that she needed to get her chores done. This piece of metal that Defendant held one foot away from Tanya's chest weighs about ten ounces and is used as a brace to keep the door of a rabbit cage closed. According to Tanya, Defendant hit her on the right hand with that piece of metal, which hurt and caused a bruise. Prior to that, Defendant had grabbed Tanya's nose twice and "nudged" her in the head with a hockey stick to "wake her up." After Defendant hit Tanya with the piece of metal, she finished her chores but did not tell anyone that her hand was injured. Later, Tanya called her best friend's mother to get a ride to Newton High School. Tanya told her what had happened, and upon arriving at the school Tanya told the school principal what had happened. Police were then called to the school.
 {¶ 4} Deputy Bryce Adams of the Miami County Sheriff's Office, a school resource officer, was alerted by the principal of Newton High School to this incident involving Tanya Albright. Deputy Adams interviewed Tanya and she told him what had happened. Deputy Adams observed a light red mark, similar to a rash that was two to three inches long and less than one inch wide, running from her knuckles to her wrist, on Tanya's right hand. Tanya did not require any medical attention for her injury. After investigating, Deputy Adams arrested Defendant for domestic violence.
 {¶ 5} According to Defendant's version of the events, he did not hit Tonya in the hand with the piece of metal. Rather, she raised her hand up while Defendant was pointing it at her, causing her hand to come in contact with the piece of metal.
 {¶ 6} Defendant was charged by complaint filed in Miami County Municipal Court with one count of domestic violence in violation of R.C. 2919.25(A). Following a trial to the court, Defendant was found guilty of domestic violence as charged. The trial court sentenced Defendant to sixty days in jail, all suspended, a two hundred and fifty dollar fine plus court costs, and one year of probation including parenting and anger management classes.
 {¶ 7} Defendant has timely appealed to this court from his conviction and sentence. The State has not filed a brief.
FIRST ASSIGNMENT OF ERROR
 {¶ 8} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FOUND THE DEFENDANT JUDSON, III, TO HAVE ACTED `KNOWINGLY' IN CONVICTING HIM OF THE CHARGE OF DOMESTIC VIOLENCE."
 {¶ 9} Defendant argues that his conviction is against the manifest weight of the evidence because his own testimony demonstrates that he did not "knowingly" cause physical harm to his stepdaughter, Tanya Albright.
 {¶ 10} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
 {¶ 11} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52.
 {¶ 12} The credibility of the witnesses and the weight to be given to their testimony is a matter for the trier of facts to resolve. State v. DeHass (1967), 10 Ohio St.2d 230. In Statev. Lawson (August 22, 1997), Montgomery App. No. 16288, we observed:
 {¶ 13} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 14} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 15} Defendant was found guilty of violating R.C.2919.25(A) which provides:
 {¶ 16} "No person shall knowingly cause or attempt to cause physical harm to a family or household member."
 {¶ 17} "Knowingly" is defined in R.C. 2901.22(B):
 {¶ 18} "A person acts knowingly, regardless of his purpose, when he is aware that this conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 19} "Physical harm to persons" is defined in R.C.2901.01(A)(3):
 {¶ 20} "`Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration."
 {¶ 21} Defendant argues that his conviction for knowingly causing physical harm to his stepdaughter, Tanya Albright, is against the manifest weight of the evidence because his own testimony that he did not hit Tanya with the piece of metal demonstrates that Defendant did not "knowingly" cause physical harm. By his own admission, Defendant was using this metal object to "make a point" by pointing it at Tanya's chest from a mere one foot away while simultaneously yelling at Tanya and calling her names because she had not completed her chores. Given the emotionally charged atmosphere that surrounded this incident, and taking into consideration all of the facts and circumstances, including Tanya's anger at Defendant's behavior and her history of defiance when disciplined, the trial court sitting as the trier of fact could reasonably conclude, as it did, that Defendant acted knowingly because his conduct created a situation in which some physical harm, however slight, was probable or likely.
 {¶ 22} More importantly, Defendant's claim that his own testimony demonstrates that he did not make any overt motion with the metal object, such as striking Tonya, conveniently ignores Tonya's testimony, which demonstrates that Defendant did more than just point the piece of metal at Tonya. Tonya emphatically denied that she had raised her hand, causing it to come in contact with the piece of metal Defendant was holding. Rather, Tonya testified that Defendant struck her in the hand with that piece of metal.
 {¶ 23} Tonya's testimony, if believed, is clearly sufficient to demonstrate that Defendant acted knowingly in causing physical harm because he was aware that his conduct, striking Tonya with the piece of metal, would probably cause some physical harm regardless of how slight. That the trial court chose to believe the victim's version of these events rather than Defendant's version is apparent from its conclusion that Defendant struck Tonya in the hand with this piece of metal, grabbed her nose twice, and hit or "nudged" her in the head with a hockey stick. Defendant denied doing all these things. The trial court did not lose its way in this case simply because it chose to believe Tonya's version of the events rather than Defendant's, which it was entitled to do.
 {¶ 24} In reviewing this record as a whole we cannot say that the evidence weighs heavily against a conviction, that the trier of facts, the trial court, lost its way, or that a manifest, miscarriage of justice has occurred. Defendant's conviction for "knowingly" causing physical harm to Tonya Albright is not against the manifest weight of the evidence.
 {¶ 25} The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 26} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT HELD THAT THE AFFIRMATIVE DEFENSE OF PARENTAL DISCIPLINE HAS NOT BEEN PROVEN BY A PREPONDERANCE OF THE EVIDENCE."
 {¶ 27} Defendant argues that his conviction for domestic violence is contrary to law because he presented sufficient evidence to prove, by a preponderance of the evidence, the affirmative defense that his conduct constituted proper and reasonable parental discipline.
 {¶ 28} In State v. Suchomski (1991), 58 Ohio St.3d 74, the Supreme Court recognized that the domestic violence statute does not prohibit a parent from properly disciplining his or her child. The only prohibition is that a parent may not cause "physical harm," which is defined in R.C. 2901.01 as "any injury." "Injury" is defined as the invasion of any legally protected interest of another. Id.; State v. Adaranijo,153 Ohio App. 3d 266, 2003-Ohio-3822; State v. Holzwart,151 Ohio App.3d 417, 2003-Ohio-345.
 {¶ 29} A child does not have any legally protected interest that is invaded by proper and reasonable parental discipline.Suchomski, supra. Therefore, a parent may use physical punishment as a method of discipline without violating the domestic violence statute as long as the discipline is proper and reasonable under the circumstances. Adaranijo, supra. "Proper" and "reasonable" have been defined as "suitable or appropriate" and "not extreme or excessive." State v. Hicks (1993),88 Ohio App.3d 515. Of course, the nature of any physical injury inflicted or attempted to be inflicted may be evidence demonstrating that the actor's conduct was not proper and reasonable parental discipline. State v. Hause (August 6, 1999), Montgomery App. No. 17614. In Hause, supra, this court observed:
 {¶ 30} "Suchomski, supra, recognizes the right of parents to control and raise their own children by imposing reasonable physical discipline to prevent and punish the child's misconduct. The right of a parent to manage the rearing of a child is a fundamental liberty interest. Santosky v. Kramer (1982),455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599. Indeed, that parental right is among those inalienable rights secured by natural law which Article I, Section 1 of the Ohio Constitution was intended to protect from infringement by the police power of the state. Nevertheless, the state has legitimate interests in the protection and safety of children and in the reporting of child abuse, which it may employ its police power to enforce. The parental right and the state's interest are in a delicate balance." (Opinion at 6-7).
 {¶ 31} Whether any particular conduct constitutes proper and reasonable parental discipline is a question that must be determined from the totality of all of the relevant facts and circumstances. We are mindful that the domestic violence laws are meant to protect against abuse, not prohibit parental discipline, and courts should be slow to intervene between parent and child in resolving issues of discipline involving minimal physical harm. Adaranijo, supra. Furthermore, some forms of physical punishment other than traditional spanking may be proper and reasonable. State v. Hart (1996), 110 Ohio App.3d 250;Adaranijo, supra.
 {¶ 32} The totality of the facts and circumstances in this case do not indicate that Defendant was acting maliciously when he struck his stepdaughter's hand. Defendant's conduct was provoked by Tonya's failure or refusal to do the chores Defendant had asked her to do, which was a reasonable request under the circumstances. Furthermore, the blow to Tonya's hand did not create any risk of death or serious physical harm, or even substantial pain. By all accounts it had little residual effect. Nevertheless, the physical punishment administered in this case was not limited to the use of an open hand, for example, for slapping the child in the face, which we and other courts have approved under some circumstances. Hause, supra; Adaranijo,supra. Rather, in this case, a metal instrument was used to strike the child. In that regard we point out that on cross-examination Defendant admitted that he has previously hit his children with this object, a piece of tin metal, in order to discipline them, that he has previously hit Tonya with this metal object, and that it could hurt if one was hit with it.
 {¶ 33} The trial court concluded that Defendant's conduct in striking his stepdaughter's hand with this metal object was not appropriate as a means of physical punishment and was extreme and excessive under the circumstances, and therefore, was not proper and reasonable parental discipline. Under the totality of these facts and circumstances, we conclude that the trial court acted well within its discretion in reaching its decision. Having failed to prove that affirmative defense, Defendant was properly found guilty of domestic violence.
 {¶ 34} The second assignment of error is without merit. The judgment of the trial court will be affirmed.
Wolff, J. and Donovan, J., concur.