[Cite as *Collier v. Bayless*, 2018-Ohio-3922.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| SANDRA L. COLLIER | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 27958 |
| | : | |
| v. | : | Trial Court Case No. 2017-DV-01288 |
| | : | |
| GERALD D. BAYLESS | : | (Domestic Relations Appeal) |
| | : | |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 28th day of September, 2018.

. . . . . . . . . . .

JAMES R. KIRKLAND, Atty. Reg. No. 0009731, 10532 Success Lane, Dayton, Ohio 45458
    Attorney for Plaintiff-Appellant

ELLEN C. WEPRIN, Atty. Reg. No. 0042354, 4 East Schantz Avenue, Dayton, Ohio 45409
    Attorney for Defendant-Appellee

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Plaintiff-appellant Sandra L. Collier (hereinafter referred to as "Mother") appeals a decision of the Montgomery County Court of Common Pleas, Domestic Relations Division, which overruled her objections to the magistrate's decision, dismissed her petition for a domestic violence civil protection order (CPO), and vacated the ex parte domestic violence CPO. Mother filed a timely notice of appeal with this Court on April 4, 2018.

{¶ 2} Initially, we note that Mother and defendant-appellee Gerald D. Bayless (hereinafter referred to as "Father") are the parents of G., age 10, the protected party in this case. The record establishes that Mother and Father have a shared parenting plan for G. ordered by the Montgomery County Juvenile Court. The shared parenting plan designates Father as the residential parent for school purposes and provides Mother with standard parenting time on Wednesday evenings and every other weekend.

{¶ 3} The incident which forms the basis for the instant appeal occurred in the early evening of Wednesday, September 27, 2017, when Father was helping G. study at a public library. At approximately 5:30 p.m., Father hit G. in the face with the back of his right hand. At the domestic violence CPO hearing, Father testified that he "flicked" G. in the face after G. talked back to him several times after being warned to stop. After the incident, Father and G. left the library and traveled to a predetermined location to drop off G. for his midweek visitation with Mother.

{¶ 4} After taking custody of G., Mother testified that she noticed that he had a "funny look" on his face. Eventually, G. told Mother that Father had hit him in the face. Mother testified that she observed that G.'s nose was swollen and tender to the touch.

Mother also reported that she observed some dried blood in G.'s nasal cavity. Mother and G. traveled back to the library, where Mother called the police and reported the incident. Shortly thereafter, police officers from the City of Dayton arrived and took statements from Mother and G., who reported that Father had hit G. with his right hand in the nose area. G. reported to police that his pain level was a ten on a scale of one to ten (ten being the worst). The officers testified that G.'s nose appeared to be somewhat swollen, but there was no bleeding or any other observable injury. The officers also testified that G.'s reported pain level appeared to be rather exaggerated given the limited extent of his injuries. The officers testified that G. appeared to be sad, but was not crying, upset, or agitated. We also note that Mother declined any paramedic treatment for G. or an ambulance to take him to the hospital.

{¶ 5} Later that night, Mother took G. to be treated at Dayton Children's Hospital. The record establishes that G. was examined at approximately 10:00 p.m. that night, approximately four hours after the incident occurred. After the examination, G. was found to have some generalized nasal swelling, mild tenderness to the tip of his nose, a miniscule scar on his left nasal septum, and some dried blood in his nasal cavity. Plaintiff's Exhibit 1. The examination further revealed that G. had "no septal hematoma, no septal deviation, no active bleeding." *Id.* The examination concluded that G. had suffered a minor nasal injury and epistaxis (minor nosebleed). We note that Tanya Sheets, the social worker assigned to the case, testified that Mother stated that the emergency room physician informed her that G. had a broken nose. However, G.'s medical record from that night contains no evidence of a broken nose. At the petition hearing, Mother could not explain why G.'s medical records did not support her assertion that G.'s nose had

been broken.

{¶ 6} On September 28, 2017, Mother filed a petition for a domestic violence CPO pursuant to R.C. 3113.31 against Father, as well as an ex parte CPO. As result of the issuance of the ex parte CPO, G. was designated as a protected party on the same day. A hearing was held before the magistrate on Mother's domestic violence CPO petition on the following dates: October 13, 2017; November 2, 2017; and November 3, 2017. In a decision issued on November 7, 2017, the magistrate recommended that Mother's petition for a domestic violence CPO be dismissed and the ex parte CPO be vacated.

{¶ 7} On November 14, 2017, Mother filed objections to the magistrate's decision. A transcript of the hearing was filed on January 10, 2018. Thereafter on February 2, 2018, Mother filed supplemental objections to the magistrate's decision. Father did not file a response to Mother's objections. On March 5, 2018, the trial court issued a decision overruling Mother's objections and adopting the decision of the magistrate.

{¶ 8} Mother now appeals from this judgment.

{¶ 9} Because they are interrelated, Mother's first and second assignments of error will be discussed together as follows:

THE TRIAL COURT ERRED WHEN IT ABUSED ITS DISCRETION FAILING TO CONSIDER THE CHILD'S TESTIFYING UNDER OATH AS TO THE STRICKING [sic] BY THE FATHER.

THE TRIAL COURT ERRED WHEN IT ABUSED ITS DISCRETION BY FAILING TO CONSIDER THAT THE CHILD WAS FOUND TRUTHFUL AND CONSISTENT BY POLICE OFFICERS AND HOSPITAL LIAISONS.

{¶ 10} In her first and second assignments, Mother essentially argues that the trial

court's judgment dismissing her petition for a domestic violence CPO and vacating the ex parte CPO was against the manifest weight of the evidence, because the trial court failed to take into account the testimony of G., the responding police officers, and hospital personnel who interviewed G. regarding Father's conduct.

{¶ 11} The appropriate standard to be employed by the trial court when reviewing a magistrate's decision is set forth in *Quick v. Kwiatkowski,* 2d Dist. Montgomery No. 18620, 2001 WL 871406, *3 (Aug. 3, 2001):

Magistrates are neither constitutional nor statutory courts. Magistrates and their powers are wholly creatures of rules of practice and procedure promulgated by the Supreme Court. Therefore, magistrates do not constitute a judicial tribunal independent of the court that appoints them. Instead, they are adjuncts of their appointing courts, which remain responsible to critically review and verify the work of the magistrates they appoint. * * * Civ.R. 53(E)(4)(b) contemplates a de novo review of any issue of fact or law that a magistrate has determined when an appropriate objection is timely filed. The trial court may not properly defer to the magistrate in the exercise of the trial court's de novo review. The magistrate is a subordinate officer of the trial court, not an independent officer performing a separate function.

The "abuse of discretion" standard that the trial court applied to review the decision of its magistrate is an appellate standard of review. It is applicable to the review performed by a superior court of the judgments and orders of inferior courts. Inherent in the abuse of discretion standard

are presumptions of validity and correctness, which acknowledge the independence of the inferior courts by deferring to the particular discretion they exercise in rendering their decisions. Because its magistrate does not enjoy that independence, such presumptions are inappropriate to the trial court's review of a magistrate's decisions. Therefore, a trial court errs when it applies the abuse of discretion standard of review in ruling on Civ.R. 53(E)(3) objections to the decision of the appointed magistrates * * *.

{¶ 12} In reviewing Mother's argument, we must be guided by the presumption that the trial court was best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and to use these observations in weighing the credibility of the proffered testimony. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). We must defer to the factual findings of the judge regarding the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. We may not substitute our judgment for that of the trier of fact. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993).

{¶ 13} Initially, we note that at the time of the instant proceedings, G. was nine years old. Therefore, the magistrate held an in camera interview of G. in order to determine if he was competent to testify. Ultimately, the magistrate found G. competent and allowed him to testify.

{¶ 14} During his direct testimony, G. testified that Father had hit him in the nose after he misspelled a word on his reading list from school. G. testified that as a result of being hit, he started crying, his nose began to bleed, and he immediately went to the bathroom to attend to his injury. G. further testified that Father had whipped him several

times in the past and had recently grabbed him by the throat and put him up against a wall. Because of these incidents, G. testified that he was scared of Father.

{¶ 15} As previously stated, Father testified that he "flicked" G. in the face with the back of his hand because G. was "mouthing off" and had already been warned several times to stop. Father denied that G. cried after being struck. Father also testified that he did not observe that G.'s nose was bleeding nor did G. go to the bathroom. Father testified that he was not trying to hurt G., but only to discipline him for talking back.

{¶ 16} The public library where the incident occurred had video cameras which were able to record the event. The video clearly depicts Father reaching across the table and striking G. in his facial area. However, the video contradicts G.'s testimony that he got up immediately thereafter and went to the bathroom. Rather, the video depicts that, after being struck by Father, G. remained seated at the table, ostensibly finishing his homework.

{¶ 17} Father also presented the testimony of Grecia Vaughn, a teacher in Dayton Public Schools and friend of Father's through family connections. Vaughn's daughter is also in G.'s class at school. Vaughn testified that she and her daughter were present at the same table at the library when the incident occurred. Vaughn testified that she observed that G. was repeatedly talking back to Father while the children were studying. After asking G. to stop "mouthing off" several times, Vaughn testified that Father struck G. lightly across the face. Vaughn testified that after the incident, the children finished their homework and got up to leave. Vaughn testified that G. was not bleeding and that he never got up to go the bathroom. As they were leaving, Vaughn observed that G. "was dancing going out" of the library after she had complimented him on his basketball

shoes.

{¶ 18} As previously stated, three police officers responded to the scene on the evening of September 27, 2017. The officers took statements from Mother and G., who reported that Father had hit G. with his right hand in the nose area. G. reported to police that his pain level was a ten on a scale of one to ten. The officers testified that G.'s nose appeared to be somewhat swollen, but there was no bleeding or any other observable injury. The officers also testified that G. appeared to be sad, but was not crying, upset, or agitated. Significantly, Mother declined any paramedic treatment for G. or an ambulance to take him to the hospital.

{¶ 19} Lastly, Mother presented G.'s medical records from Dayton Children's Hospital on the night of the incident. Those records established that G. was found to have to have some generalized nasal swelling, mild tenderness to the tip of his nose, a miniscule scar on his left nasal septum, and dried blood in his nasal cavity. Furthermore, the records stated that G. had "no septal hematoma, no septal deviation, no active bleeding." The attending physician concluded that G. had suffered a minor nasal injury and had some dried blood in his nostril.

{¶ 20} In the instant case, it is undisputed that Father struck G. in the nose on September 27, 2017. On the record before us, we cannot say that the trial court erred in finding that Father's conduct did not constitute domestic violence. The record supports the trial court's finding that Father's conduct was consistent with reasonable parental discipline.

{¶ 21} We addressed the issue of parental discipline and domestic violence in *State v. Thompson*, 2d Dist. Miami No. 04CA30, 2006-Ohio-582, wherein we stated the

following:

In *State v. Suchomski* (1991), 58 Ohio St.3d 74, the Supreme Court recognized that the domestic violence statute does not prohibit a parent from properly disciplining his or her child. The only prohibition is that a parent may not cause "physical harm," which is defined in R.C. 2901.01 as "any injury." "Injury" is defined as the invasion of any legally protected interest of another. *Id*.; *State v. Adaranijo*, 153 Ohio App.3d 266, 2003-Ohio-3822; *State v. Holzwart*, 151 Ohio App.3d 417, 2003-Ohio-345.

A child does not have any legally protected interest that is invaded by proper and reasonable parental discipline. *Suchomski*, *supra*. Therefore, a parent may use physical punishment as a method of discipline without violating the domestic violence statute as long as the discipline is proper and reasonable under the circumstances. *Adaranijo*, *supra*. "Proper" and "reasonable" have been defined as "suitable or appropriate" and "not extreme or excessive." *State v. Hicks* (1993), 88 Ohio App .3d 515. Of course, the nature of any physical injury inflicted or attempted to be inflicted may be evidence demonstrating that the actor's conduct was not proper and reasonable parental discipline. *State v. Hause* (August 6, 1999), Montgomery App. No. 17614. In *Hause, supra*, this court observed:

> *Suchomski, supra*, recognizes the right of parents to control and raise their own children by imposing reasonable physical discipline to prevent and punish the child's misconduct. The right of a parent to manage the rearing of a

child is a fundamental liberty interest. Santosky v. Kramer (1982), 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599. Indeed, that parental right is among those inalienable rights secured by natural law which Article I, Section 1 of the Ohio Constitution was intended to protect from infringement by the police power of the state. Nevertheless, the state has legitimate interests in the protection and safety of children and in the reporting of child abuse, which it may employ its police power to enforce. The parental right and the state's interest are in a delicate balance.

(Opinion at 6-7).

Whether any particular conduct constitutes proper and reasonable parental discipline is a question that must be determined from the totality of all of the relevant facts and circumstances. We are mindful that the domestic violence laws are meant to protect against abuse, not prohibit parental discipline, and courts should be slow to intervene between parent and child in resolving issues of discipline involving minimal physical harm. *Adaranijo*, *supra*. Furthermore, some forms of physical punishment other than traditional spanking may be proper and reasonable. *State v. Hart* (1996), 110 Ohio App.3d 250; *Adaranijo*, *supra*.

*Id*. at ¶ 28-31.

{¶ 22} We note that Ohio law recognizes a parent's right to administer corporal punishment. R.C. 2919.22(B) provides in relevant part:

(B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:

(1) Abuse the child;

(2) Torture or cruelly abuse the child;

(3) Administer corporal punishment or other physical disciplinary measure, or physically restrain the child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child;

(4) Repeatedly administer unwarranted disciplinary measures to the child, when there is a substantial risk that such conduct, if continued, will seriously impair or retard the child's mental health or development. * * *

{¶ 23} In analyzing the totality of the circumstances, a court should consider the child's age, the child's behavior leading up to the discipline, the child's response to prior non-corporal punishment, the location and severity of the punishment, and the parent's state of mind while administering the punishment. *State v. Zielinski*, 12th Dist. Warren No. CA2010-12-121, 2011-Ohio-6535, ¶ 25. The burden is on the defendant to establish parental discipline as an affirmative defense. *State v. Sellers*, 12th Dist. Butler No. CA2011-05-083, 2012-Ohio-676, ¶ 15.

{¶ 24} The totality of the facts and circumstances in the instant case do not indicate that Father was acting maliciously when he struck G. in the face with the back of his hand. Father's conduct was provoked by G.'s repeated failure to stop talking back while the

children were studying, which was a reasonable request under the circumstances. Significantly, the physical punishment administered in this case was limited to the use of the back of Father's hand, akin to slapping the child in the face with an open hand, which we and other courts have approved under some circumstances. *Hause*, 2d Dist. Montgomery No. 17614, 1999 WL 959184, *3; *Adaranijo*, 153 Ohio App.3d 266, 2003-Ohio-3822, 792 N.E.2d 1138. Finally, we have reviewed the video recording of the incident at the library and find that it fails to support G.'s version of the events.

{¶ 25} Considering all of the facts and circumstances, we are satisfied that the trial court's finding of proper and reasonable parental discipline was supported by the record. Accordingly, we cannot say that the trial court abused its discretion when it dismissed Mother's petition for a domestic violence CPO and vacated the ex parte CPO against Father.

{¶ 26} Mother's first and second assignments of error are overruled.

{¶ 27} Mother's third assignment of error is as follows:

THE TRIAL COURT ERRED WHEN IT ABUSED ITS DISCRETION WHEN IT ALLOWED THE IN THE TESTIMONY OF THE CHILDREN SERVICES WORKER THAT WAS BEYOND THE SCOPE OF THE WORKER'S JOB.

{¶ 28} In her third and final assignment, Mother argues that the trial court erred when it admitted the testimony of Tanya Sheets, a case worker for Montgomery County Children's Services. Mother contends that Sheets's statements regarding the veracity of G. and Mother constituted expert testimony pursuant to Evid.R. 702. Mother argues that Sheets was not identified as an expert witness, and was therefore not qualified to testify in that capacity. Specifically, Mother argues that Sheets was speaking outside

her role as a case worker and "had absolutely no authority to garner this opinion."

{¶ 29} Sheets was the case worker assigned to investigate the allegations of domestic violence against Father. During her investigation, Sheets testified that she interviewed Mother, Father, G., G.'s school staff and nurse, the library staff members, at least one of the investigating police officers, and staff at Children's Hospital. As noted by the trial court, Sheets testified to her general impressions gathered during her investigation and MCCS's final determination that Father did not abuse G. Sheets also testified that she had been made aware that the Montgomery County Prosecutor's Office was not pursuing any child abuse charges against Father.

{¶ 30} Upon review, we agree with the trial court and find that Sheets testified in her capacity as a lay witness, rather than an expert witness. Evid.R. 701 states that "[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Under Evid.R. 701, lay opinion testimony must be "rationally based on the perception of the witness. Perception connotes sense: visual, auditory, olfactory, etc. Thus, opinion testimony under Evid.R. 701 must be based on firsthand, sensory based knowledge." *Sec. Natl. Bank & Trust Co. v. Reynolds*, 2d Dist. Greene No. 2007 CA 66, 2008-Ohio-4145, ¶ 17.

{¶ 31} The trial court has "considerable discretion in admitting the opinion testimony of lay witnesses." (Citation omitted.) *State v. Marshall*, 191 Ohio App.3d 444, 2010-Ohio-5160, 946 N.E.2d 762, ¶ 43 (2d Dist.). An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v.*

*Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 32} In the instant case, Sheets was the case worker assigned to investigate the allegations of domestic violence brought against Father by Mother. As part of her investigation, Sheets interviewed everyone pertinent to the case, specifically including Mother, Father, G., G.'s school staff and nurse, the library staff members, at least one of the investigating police officers, and staff at Children's Hospital. The information uncovered by Sheets during her investigation went to the very heart of the domestic violence allegations made against Father. As the lead case worker, the results of Sheets's investigation were directly relevant to the determination made by MCCS whether G. would remain out of Father's care. Sheets was not providing expert testimony, but rather admissible lay testimony based upon her own firsthand observations and perceptions of the individuals whom she interviewed, especially G. and Mother, and Father. Based upon Sheets's investigation and conclusions drawn therefrom, MCCS decided to allow Father to continue as residential parent.

{¶ 33} However, at one point during Sheets's testimony, the following exchange occurred:

Defense Counsel: After you spoke to [G.], what was your impression?

Plaintiff's Counsel: We'll object; there's been no finding or filing by Children's Services. There's nothing pending.

The Court: I don't think that's a requirement. Overruled.

Sheets: So during my conversation with [G.], he would answer questions differently depending on the topic. So if we were talking about

things he liked to do, things that occurred in school. Any of those things, he would make contact – eye contact with you, he'd be very engaged in the conversation.

Any conversation in regards to this incident, that was result of the referral to Children's Services, he would not make eye contact with you. He was not consistent and he would pace.

Defense Counsel: What's pace?

Sheets: Walk back and forth, look at the floor, look at the ceiling. He wasn't – he didn't have the same kind of conversation.

Defense Counsel: What does that indicate to you as a –

Plaintiff's Counsel: I'm gonna object.

Trial Court: Overruled.

Sheets: Well, it's not necessarily that by itself, but that combined with the statements and the other information we obtained from the investigation. We believe that [G.] –

Plaintiff's Counsel: We object to what they believe. There is no finding, they haven't filed, and she's not in a position to make that finding. It's got to be her supervisors, etcetera.

Trial Court: Overruled.

Sheets: *We believe that he wasn't being honest.*

(Emphasis added.)

**{¶ 34}** An expert may not offer a direct opinion on whether a child is telling the truth. *State v. Rosas*, 2d Dist. Montgomery No. 22424, 2009-Ohio-1404, ¶ 42, citing *State*

*v. Boston*, 46 Ohio St.3d 108, 545 N.E.2d 1220 (1989), syllabus, overruled in part on other grounds by *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944. We find that it was error for the trial court to allow Sheets to testify regarding whether she believed that G. was being honest with respect to his version of the incident.[1]  However, standing alone and in light of the totality of the evidence submitted in the instant case, we cannot say that the trial court's error in allowing to Sheets to opine regarding G.'s honesty was anything other than harmless error.

{¶ 35} Ohio courts have held the following:

A *Boston* violation may be harmless error beyond a reasonable doubt when considering certain factors.  Those factors include "(1) if the victim testifies and is subject to cross-examination, (2) the state introduces substantial medical evidence of sexual[2] [or other] abuse, and (3) the expert or lay person's opinion testimony is cumulative to other evidence." *State v. Palmer*, 9th Dist. Medina No. 2323–M, * * * 1995 WL 48442 (Feb. 8, 1995); *State v. Lewis*, 9th Dist. Summit No. 14632, * * * 1991 WL 156559 (Aug. 14, 1991); *State v. Djuric*, 8th Dist. Cuyahoga No. 87745, 2007-Ohio-413, ¶ 44.

However, a finding of harmless error is not justified if the case is a "credibility contest" between the victim and the defendant. *State v. Burrell*, 89 Ohio App.3d 737, 746, 627 N.E.2d 605 (9th Dist.1993).  Thus, in order

---

[1] We note that, although Sheets was testifying in a lay witness capacity and not as an expert witness, the *Boston* rule still applies, and she was prohibited from testifying regarding whether she believed G. was being honest with respect to his version of the incident.

[2] We recognize that this factor is not relevant here.

to find a *Boston* violation harmless, some independent evidence must exist when it is a credibility contest between the defendant and the victim. *State v. West*, 8th Dist. Cuyahoga No. 90198, 2008-Ohio-5249 [2008 WL 4516673].

*State v. Eisermann*, 8th Dist. Cuyahoga No. 100967, 2015-Ohio-591, ¶ 63–64.

**{¶ 36}** Unlike in *Boston*, the victim, G., testified in this case as did his mother. Accordingly, the child was subject to cross-examination and the trial court was able to independently ascertain the credibility of the child. The court was also able to view a video of the incident. *See generally State v. Benjamin*, 8th Dist. Cuyahoga No. 87364, 2006-Ohio-5330. Significantly, this was not merely a credibility contest between Father and G., as Father acknowledged striking the child. Rather, it was a matter of what constituted reasonable parental discipline versus domestic violence. Here, the magistrate viewed the video evidence, heard G.'s answers, witnessed his demeanor, and judged his credibility completely independently of Sheets's testimony concerning the child's veracity.

**{¶ 37}** Essentially, Sheets did not provide any expert opinion as to G.'s accounting of the incident. Rather, Sheets noted that G.'s responses to questions lacked consistency, and he avoided eye contact only when relating this incident. Her interview with G. led her to conclude that G.'s safety was not in danger. This, coupled with her lay opinion that G. was being dishonest, was admissible under Evid.R. 701. With the exception of her testimony regarding G.'s veracity, the admission of which was harmless error on this record, the trial court did not err when it admitted the balance of Sheets's testimony.

**{¶ 38}** Mother's third and final assignment of error is overruled.

{¶ 39} All of Mother's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies mailed to:

James R. Kirkland
Ellen C. Weprin
Hon. Timothy D. Wood