[Cite as *State v. Cook*, 2021-Ohio-3841.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-210142 |
| | | C-210143 |
| Plaintiff-Appellee, | : | C-210144 |
| | | TRIAL NOS. 20CRB-13263 A-C |
| vs. | : | |
| CHRISTIAAN COOK, | : | *O P I N I O N.* |
| Defendant-Appellant. | : | |

Criminal Appeals From: Hamilton County Municipal Court

Judgments Appealed From Are: Affirmed in Part, Sentences Vacated, and Cause Remanded

Date of Judgment Entry on Appeal: October 29, 2021

*Andrew W. Garth,* City Solicitor*, William T. Horsley,* Chief Prosecuting Attorney, and *Joshua Loya*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller,* Hamilton County Public Defender, and *David Hoffmann,* Assistant Public Defender, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1}  Defendant-appellant Christiaan Cook appeals his convictions for domestic violence and child endangerment. For the reasons set forth below, we affirm the judgments of the trial court in part, but remand the cause for a new sentencing hearing at which the state must choose which allied offense to pursue.

## I.  *Facts and Procedure*

{¶2}  On July 12, 2020, defendant-appellant Christiaan Cook was with his two children in a gymnasium parking lot getting ready to play basketball. Prior to entering the facility, Cook discovered that his four-year-old son, S.S., had discarded part of his lunch underneath the car.

{¶3}  At a bench trial, Cincinnati Police Officer Anthony Dawson testified that he was completing an unrelated police report in the parking lot, when he heard someone yelling nearby. Dawson testified that he saw Cook "slap [S.S.] on top of his head. And then * * * grab [S.S.] by the back of the neck and pick him up by the back of his neck and then slam him on the trunk of a car. And then * * * pull the child off of the car again and then str[ike] the child again after that." Dawson explained that Cook "face planted [S.S.] face first down onto the trunk of the car, forcefully." It was at this point that Dawson activated his body camera and intervened.

{¶4}  Cook testified that he did not slam S.S. on the car or slap him on the head. Rather, Cook testified on direct examination that, after finding S.S.'s chicken nuggets underneath the car, "I picked him up. I was talking to him. I put him on the car. I smacked him on the butt three times, and I took him off." Cook testified that he spanked S.S. for lying to him about finishing his lunch, not for simply wasting food, saying, in reference to S.S., "you can't keep thinking you're slicker and smarter than

everybody but then turn around and act like a baby." Cook explained that S.S. did not yell out from the slaps, but that he yelled out because the back of Cook's black car had become hot while sitting in the July sun. When explaining S.S.'s reaction to the hot car, Cook testified, "[s]o that was the neck snatch." When asked about this statement on cross-examination, Cook testified that he did not grab his son this way, saying, "I never said I snatched my son by the neck because I did not. There is no evidence, no video. It never happened." Cook said that when lifting S.S. to put him on the car and when taking him off, he lifted him by grabbing his arms.

{¶5} The body camera footage was introduced at trial and shows Cook and his sons near his car in the parking lot. After Dawson intervened, Cook said "[t]hese are my kids, bro. You can't tell me how to discipline my kids. I ain't beat him—or none of that. I will discipline him when he don't listen. Now tell this Officer you're sorry for throwing that food out." Cook continued, saying "[t]hese are my kids I got the right to whoop [their] ass. He ain't got no bruises, no nothing on him."

{¶6} Another police officer arrived on the scene, and Cook was arrested, charged with assault, domestic violence, and child endangerment.

{¶7} The trial judge found Cook guilty on all counts. The court merged the assault charge into the domestic-violence charge, but sentenced Cook to concurrent terms of 180 days in jail with four days of credit on the domestic-violence and child-endangerment charges. The remaining days were suspended and Cook was placed on community control for one year. The court remitted fines for both charges, with Cook owing court costs for only the child-endangerment charge. The court stayed the sentence pending this appeal.

{¶8} Cook raises two assignments of error for our review.

## II. *Sufficiency and Manifest Weight*

{¶9}     In his first assignment of error, Cook argues that both convictions are based on insufficient evidence and are against the manifest weight of the evidence.

### 1.   Sufficiency of the Evidence

{¶10} When reviewing a sufficiency-of-the-evidence challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 274, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds*, *State v. Smith,* 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4. Because this is a question of law, we will not weigh the evidence. *State v. Porter,* 1st Dist. Hamilton No. C-200459, 2021-Ohio-3232, ¶ 19, quoting *State v. MacDonald*, 1st Dist. Hamilton No. C-180310, 2019-Ohio-3595.

### A.   Domestic Violence

{¶11} Ohio's domestic-violence statute provides, "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2919.25(A). Physical harm is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). This court has said even "[t]he slightest injury," including simply inflicting pain, constitutes physical harm. *State v. Daniels,* 2018-Ohio-1701, 111 N.E.3d 708, ¶ 35-36 (1st Dist.), citing *State v. Hustead,* 83 Ohio App.3d 809, 811, 615 N.E.2d 1081 (4th Dist. 1992) (slap on the face leaving no bruising or redness was physical harm). For example, in *Daniels*, this court found a defendant caused physical harm to his spouse when he grabbed her face and chin, without leaving a mark, but causing pain. *Id.* at ¶ 7.

{¶12}  Cook argues this conviction is based on insufficient evidence because there was no evidence of physical harm done to S.S., nor was there evidence that Cook intended to harm S.S.

{¶13}  While Dawson testified that he did not observe any injuries on S.S., he did provide testimony detailing the severity of the encounter. Dawson stated that he may not have intervened at all had it been just a slap, but that he "felt the need to go over there and confront him" once he heard S.S. cry out, and saw Cook grab S.S. by the back of his neck and slam him face-down on the trunk of the car. Dawson's body camera also showed S.S. point to his neck when asked where he was hit. While Cook provided some contrary testimony on the events, we must view the evidence in the light most favorable to the state. Moreover, because even "the slightest injury" is sufficient to demonstrate physical harm, any rational trier of fact could have found the state demonstrated beyond a reasonable doubt that Cook knowingly caused physical harm to S.S. Therefore, the domestic-violence conviction was based on sufficient evidence.

### B.  Child Endangerment

{¶14}  Next, R.C. 2919.22(A), provides that parents and guardians shall not "create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." A substantial risk is "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur." R.C. 2901.01(8). The requisite mens rea for conviction under this section is recklessness. *State v. Spivey*, 1st Dist. Hamilton No. C-200125, 2021-Ohio-2598, ¶ 12, quoting *State v. McGee*, 79 Ohio St.3d 193, 680 N.E.2d 975 (1997), syllabus. Recklessness is demonstrated by a person's disregard for "a substantial and unjustifiable risk that

the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

{¶15} Acts of affirmative abuse are covered within R.C. 2919.22(A), including "where a defendant has failed to protect the child from harm inflicted upon the child while in the defendant's care," even when the defendant is the person who inflicted the harm. *State v. Klofta*, 2d Dist. Montgomery No. 28690, 2020-Ohio-5032, ¶ 32, quoting *State v. Gaver*, 5th Dist. Stark No. 2015CA00204, 2016-Ohio-7055. A conviction of child endangerment can be based a single instance of conduct, as long as there is " 'evidence beyond mere speculation' " of the " 'substantial risk.' " *Cleveland Hts. v. Cohen*, 2015-Ohio-1636, 31 N.E.3d 695, ¶ 27 (8th Dist.), quoting *Middletown v. McWhorter*, 12th Dist. Butler No. CA2006-03-068, 2006-Ohio-7030, ¶ 11. However, neither actual injury, nor a pattern of physical abuse is required. *Id.* For instance, in *Klofta*, the court found that there was sufficient evidence to support a conviction under R.C. 2919.22(A) when a parent used a stun gun on her ten-year-old step-child's bottom, leaving a red mark, despite the child reporting that it merely "felt like a wasp sting." *Klofta* at ¶ 4, 34.

{¶16} Child-endangerment cases are very fact-specific. *State v. Bush,* 2020-Ohio-772, 152 N.E.3d 892, ¶ 8 (1st Dist.), citing *Beachwood v. Hill*, 8th Dist. Cuyahoga No. 93577, 2010-Ohio-3313, ¶ 21. In *Beachwood*, the court found a mother acted recklessly and created a substantial risk to her children's safety when she left her three children in her car with the windows down in a grocery store parking lot—even though they were not injured. *Beachwood* at ¶ 3-6, 21. The court commented that the fact-specific nature of child-endangerment cases was "all the more reason to find that the [prosecution] presented sufficient evidence." *Id.* at ¶ 21.

{¶17} Cook argues the state's evidence is insufficient because the state did not present expert testimony on the risks associated with lifting a child by the back of his neck. However, this court has rejected this argument in prior child-endangerment cases, holding that "[e]xpert medical testimony is not required where the creation of a risk to health or safety is within common knowledge." *State v. Hartley*, 194 Ohio App.3d 486, 2011-Ohio-2530, 957 N.E.2d 44, ¶ 25 (1st Dist.), citing *State v. Caton,* 137 Ohio App.3d 742, 739 N.E.2d 1176 (1st Dist.2000). In *Hartley,* this court affirmed a defendant's conviction under R.C. 2919.22(A), finding that it was "within common knowledge" that a daycare employee giving melatonin supplements to infants without medical supervision created a substantial risk to their health and safety. *Hartley* at ¶ 25-29. Like in *Hartley,* and taking the testimony in the light most favorable to the state, it is certainly within common knowledge that lifting a four-year-old child by his neck to slam him face-first on the trunk of the car creates a substantial risk to the child's health and safety.

{¶18} Cook also contends that his conduct did not create a substantial risk of harm because the slaps were "controlled" and did not leave a mark or cause any soreness. However, as stated above, injury is not a required finding for conviction under R.C. 2919.22(A). *Cohen*, 2015-Ohio-1636, 31 N.E.3d 695, at ¶ 27. Instead, only a substantial risk of harm must be shown.

{¶19} Thus, under a sufficiency review, we must determine whether any rational trier of fact could have found beyond a reasonable doubt that Cook (1) recklessly (2) created a substantial risk to S.S.'s health by (3) violating his duty of care.

{¶20} Based on the evidence presented at trial, any rational trier of fact could have found that the state proved each element required under R.C. 2919.22(A)

7

beyond a reasonable doubt. S.S. was only four years old, and Cook lifted him by his neck, slammed him face-first onto the trunk of a hot car, and hit him on the head. This demonstrates that Cook recklessly created a substantial risk to S.S.'s health. *See* R.C. 2919.22(A). Accordingly, we hold that the trial court's finding was based on sufficient evidence.

## 2. Manifest Weight

{¶21} Under a manifest-weight-of-the-evidence review, we "review[] the entire record, weigh[] the evidence and all reasonable inferences, consider[] the credibility of the witnesses, and determine[] whether the trial court 'clearly lost its way and created a manifest miscarriage of justice.' " *Downtime Rebuild, LLC v. Trinity Logistics, Inc.*, 2019-Ohio-1869, 135 N.E.3d 1253, ¶ 13 (1st Dist.), quoting *Fischoff v. Hamilton*, 1st Dist. Hamilton No. C-120200, 2012-Ohio-4785, ¶ 11. When reviewing under manifest weight, a new trial should only be granted in "exceptional case[s] in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983), paragraph three of the syllabus.

{¶22} Under manifest weight, Cook argues principally that the affirmative defense of reasonable parental discipline excuses him from liability for both domestic violence and child endangerment.

{¶23} The Supreme Court of Ohio has recognized reasonable parental discipline as an affirmative defense to domestic violence. *State v. Faggs*, 159 Ohio St.3d 420, 2020-Ohio-523, 151 N.E.3d 593, ¶ 24. Other Ohio courts have recognized the defense as being applicable to a child-endangerment charge as well. *State v.*

*Perez*, 8th Dist. Cuyahoga No. 108245, 2020-Ohio-100, ¶ 12; *State v. Phillips*, 5th Dist. Holmes No. 14-CA-003, 2014-Ohio-5322, ¶ 18.

**{¶24}** To successfully assert the defense, the defendant must demonstrate that the discipline was proper and reasonable based on the totality of the circumstances, considering the child's age; the child's behavior before the punishment; the child's prior response to "non-corporal punishment"; the location and severity of the punishment; and the accused's state of mind. *State v. Luke,* 3d Dist. Union No. 14-10-26, 2011-Ohio-4330, ¶ 22; citing *State v. Hart*, 110 Ohio App.3d 250, 256, 673 N.E.2d 992 (3d Dist.1996). The "corrective intent," should also be considered. *Faggs* at ¶ 22. For example, this court held a father acted reasonably when he slapped his 12-year-old daughter in the face with the back of his fingers in response to her acting out at home. *State v. Wagster*, 1st Dist. Hamilton No. C-950584, 1996 WL 134538 (Mar. 27, 1996). In making this finding, the court considered the daughter's lack of injury; and that the father had a valid corrective intent, no prior episodes of domestic violence, and immediately left the room after the incident before making amends with his daughter. *Id.* This court also found a father administered proper discipline when he slapped his 13-year-old daughter in the face and struck her on the thigh before dropping her off at school. *State v. Adaranijo*, 153 Ohio App.3d 266, 2003-Ohio-3822, 792 N.E.2d 1138, ¶ 4-5, 13 (1st Dist.).

**{¶25}** However, the Second District recently rejected the parental-discipline defense of a father who spanked his nine-year-old son 25 times, causing deep bruising on his buttocks, for allegedly glaring at the father's fiancée. *State v. Middleton*, 2d Dist. Greene No. 2019-CA-22, 2020-Ohio-1308, ¶ 38 (finding "[t]he

severity of the force was clearly disproportionate to the reason given for administering the punishment").

{¶26} At the bench trial in this case, the court rejected Cook's defense, finding the conduct was "not discipline," but rather "flatout abuse." The trial court made this decision based on Dawson's testimony and the defendant's demeanor in the body-camera footage.

{¶27} We cannot say the trial judge clearly lost his way in rejecting Cook's reasonable-parental-discipline defense. First, we must consider the age of the child at the time of the event. This weighs heavily against Cook's argument that the discipline was reasonable. S.S. was a small four-year-old-boy, leaving him more susceptible to injury.

{¶28} Moreover, considering the location and severity of the punishment, Cook struck S.S. about his face and head, before lifting him by his neck, and slamming him face-first onto the trunk. While Cook testified that he did not strike or lift S.S. in this way, Dawson's testimony supports the trial court's finding that S.S. was struck in the head and neck area. The body-camera footage of S.S. pointing to his neck when asked where he was hit also supports this finding. Moreover, Cook's comment on direct examination ("so that was the neck snatch") weakens the credibility of his insistence that he did not lift S.S. by the neck. This too cuts against reasonableness. The judge did not clearly lose his way in believing Dawson's testimony over Cook's testimony regarding Cook's conduct.

{¶29} The defendant's state of mind also weighs against the defense. Cook was clearly agitated at the time of the encounter as captured by Dawson's body camera. Shortly after Dawson approached Cook to ask for identification, Cook can be

10

seen forcefully poking S.S. in the forehead twice directly in front of Dawson, telling his son: "you gonna stop wasting food. And you ain't slick is you?" After seeing this, Dawson told Cook to "stop pushing [S.S.] on his head," to which Cook responded that he has the right to discipline his children when they do not listen, saying several times that he "has the right to whoop their ass." After giving Dawson his identification, Cook began to walk towards the gym with his children. At this point, Dawson told Cook not to leave, and said that he would tase him if he left the scene. Sufficiently agitated, Cook remained on the scene, but continued to raise his voice at Dawson throughout the encounter. Cook testified to his frustration as well, but said that he was not frustrated about his son's behavior, suggesting that the frustration came only from Dawson's intervention. However, the body-camera footage showed that Cook said, "I was whooping his ass in front of his granddaddy too and he looking at me just like you—like 'Ohh you need to calm down.' " This statement also supports the trial court's finding, as it demonstrates that this was not the first time Cook had acted aggressively while disciplining his son. Cook's frustration was significant enough that it was reasonable for the trial court to take this into consideration when rejecting the defense.

{¶30} Finally, as the court found in *Middleton,* "the severity of the force was clearly disproportionate to the reason given for administering the punishment." *Middleton*, 2d Dist. Greene No. 2019-CA-22, 2020-Ohio-1308, at ¶ 38. There again was a discrepancy as to what the discipline was being delivered for, but whether it was for telling a lie, or for wasting food, the trial court did not lose its way in finding this violent response to be unreasonable.

**{¶31}** While this court recognizes a parent's right to discipline his or her children, Cook's discipline was not reasonable considering the totality of the circumstances, and the convictions are therefore not against the manifest weight of the evidence. The first assignment of error is overruled.

### III. *Merger*

**{¶32}** In his second assignment of error, Cook argues his convictions for domestic violence and child endangerment should have merged according to R.C. 2941.25(A). The state concedes this point.

**{¶33}** Cook did not raise this issue at sentencing, and therefore waives all but plain error. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3. Such an error is only reversible if "it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice." *Id.* That said, this court has found that a trial court's failure to merge convictions is prejudicial even when the sentences are to be served concurrently, as is the case here. *State v. Goshade*, 1st Dist. Hamilton No. C-120586, 2013-Ohio-4457, ¶ 23, citing *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 31.

**{¶34}** R.C. 2941.25(A) provides that where a defendant's conduct "can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." The Supreme Court of Ohio directs us to ask three questions when identifying allied offenses of similar import:

(1) Were the offenses "dissimilar in import or significance?"

(2) Were the offenses "committed separately?"

(3) Were the offenses "committed with separate animus or motivation?"

*State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 25. If any of the above questions are answered in the affirmative, separate convictions are permissible under R.C. 2941.25.

{¶35} After considering the *Ruff* factors, it is apparent that the convictions for domestic violence and child endangerment should have merged under R.C. 2941.25(A). Accordingly, this assignment of error is sustained, the sentences are vacated, and the cause is remanded for a new sentencing hearing. *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, paragraph two of the syllabus. On remand, "the state must elect which allied offense it will pursue against the defendant." *Id.*

## IV. *Conclusion*

{¶36} For the foregoing reasons, we overrule Cook's first assignment of error. However, we sustain his second assignment of error, vacate the sentences, and remand the cause for a new sentencing hearing at which the state must elect which allied offense to pursue.

Judgments affirmed in part, sentences vacated, and cause remanded.

**Bergeron, P.J.,** and **Winkler, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.