[Cite as *State v. Middleton*, 2020-Ohio-1308.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-22 |
| | : | |
| v. | : | Trial Court Case No. CRB1801401 |
| | : | |
| DANIEL E. MIDDLETON | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 3rd day of April, 2020.

. . . . . . . . . . .

MICHAEL A. MAYER, Atty. Reg. No. 0064079, City of Fairborn Prosecuting Attorney, 510 West Main Street, Fairborn, Ohio 45324
      Attorney for Plaintiff-Appellee

BENJAMIN W. ELLIS, Atty. Reg. No. 0092449, 805-H Patterson Road, Dayton, Ohio 45419
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-Appellant, Daniel Middleton, appeals from his convictions of domestic violence and child endangering, both first-degree misdemeanors. According to Middleton, the trial court erred in admitting evidence of other acts of violence because the stated purpose of the admission was to demonstrate a pattern of bad acts, which was prejudicial. Middleton further contends that R.C. 2919.25(A) and R.C. 2919.22(B)(1), as applied to parental discipline, are unconstitutional because they relieve the State of its burden of proof and presume that constitutionally-protected parental conduct is criminal.

{¶ 2} For the reasons discussed below, we find no merit in Middleton's arguments. However, the trial court did lack subject-matter jurisdiction to consider the misdemeanor charge of child endangering under R.C. 2919.22(B)(1), because R.C. 2151.23(A)(6) gives the juvenile court exclusive original jurisdiction over such charges. Accordingly, the conviction for child endangering is void and will be vacated. The conviction for domestic violence will be affirmed. Due to the trial court's merger of the domestic violence into the child endangering for purposes of sentencing, this case will be remanded for a new sentencing hearing on the domestic violence conviction.

I. Facts and Course of Proceedings

{¶ 3} On July 20, 2018, a citation was filed in the Fairborn Municipal Court charging Middleton with domestic violence in violation of R.C. 2919.25(A) and child endangering in violation of R.C. 2919.22(B)(1). The citation arose from events that occurred on July 5, 2018, when Middleton's nine-year old son, John,[1] was at Middleton's home for

---

[1] For purposes of privacy, we will use the pseudonym of "John" to refer to the victim in this case.

parenting time. Middleton was not at home during the day, because he was working. However, Middleton's fiancée, CJ, and some friends went to the Beach waterpark and took John along. They left home at about 8:00 a.m. and left the park at around 4:00 p.m.

{¶ 4} That day, CJ did not let John get in the water or play. Instead, John was required to sit and write sentences from the Bible because Middleton said that John had lied when talking to a guardian ad litem in a custody proceeding between John's parents. Middleton had initiated the custody proceeding, and it was resolved in favor of John's mother, J.J., in May 2018. During the proceedings, a guardian ad litem had visited both parties and John.

{¶ 5} The first complaint that J.J. made about how Middleton disciplined John occurred several months before April 2018, when Middleton texted J.J. to say he had hit John with a belt. At that time, J.J. told Middleton that he did not need to hit John with a belt, and that she did not want that to happen ever again. However, Middleton let her know that he was going to keep doing what he wanted to do and what he felt was appropriate.

{¶ 6} Subsequently, in April 2018, J.J. filed a police report because Middleton had hit John with a belt for a second time. J.J. also alerted the court in which she was awaiting a custody decision. The judge in that case then told Middleton that he could not hit John with a belt, but that he could spank with an open hand. According to John, his father also spanked him and imposed a sentence of 1,000 Bible verses after he (John) told the police about being hit with a belt. John was in trouble because Middleton said he had lied to the police. Thus, Middleton imposed punishment both after John spoke to a guardian ad litem and after John told the police about his father's actions.

{¶ 7} As noted, the events involved in this case occurred on July 5, 2018. That year, July 4 was on a Wednesday, and J.J. had parenting time with John from 9:00 a.m. to 9:00 p.m. that day. Because both parents attended a Dayton Dragons game that night, they exchanged John at the game. The water park excursion occurred the next day, on Thursday. J.J. testified that she had never spanked John and that she did not strike him or do anything that would cause bruising on his buttocks before he left with his father on July 4, 2018.

{¶ 8} On Thursday, July 5, 2018, John continued to write Bible verses after he got back from the water park. During the day, John also had some conflict with CJ at the water park. According to John, he looked at CJ a few times, and she indicated she was offended. She did not say why.

{¶ 9} When Middleton got home from work that night, he talked to John and tried to figure out the problem between John and CJ. When that did not work, Middleton told John to take off his shorts. Middleton then spanked John 25 times on his buttocks. John stated that it hurt a lot and that he cried. When John took a shower, there was a little bit of blood on his bottom.

{¶ 10} The next day (Friday), when J.J. picked John up at Middleton's house, Middleton and CJ approached the car. At that time, Middleton admitted that he had spanked John, saying that he had spanked John for "mean-mugging" CJ. After J.J. and John arrived back home, J.J. asked John if she could look at his bottom. It was deeply bruised, and John said it hurt. Because it was late, J.J. told John he could go to their family doctor, as the office was open the next morning. However, when J.J. called the doctor the next morning, she was told that she needed to take John to Dayton Children's

Hospital ("DCH").

{¶ 11} John presented at DCH on Saturday, July 7, 2018, with a concern of physical abuse. After John arrived, a social worker gathered a history from J.J., took pictures of John's injuries, talked to a physician, and made mandated reports or referrals to both Children Services and the police. J.J. told the social worker that John had been "recurrently spanked," that he had been spanked two days before coming to the emergency room, and that she wanted him evaluated. Transcript of Proceedings ("Tr."), p. 18.

{¶ 12} The doctor who examined John, Dr. Drazner, had been an emergency attending physician at DCH since 1997. Dr. Drazner had been trained in recognizing pediatric child abuse and was a mandatory reporter who was required by law and ethics to report whenever he suspected abuse. John told Dr. Drazner that two days earlier, Middleton had struck him repeatedly with an open hand and that he was made to lay on the bed face down and take his pants down, but leave his underwear on.

{¶ 13} Dr. Drazner's examination revealed that John "had very extensive bruises on both buttocks and they were quite severe." Tr. at p. 119. The bruises were very deep, were on both buttocks, and were in a location that indicated John had been hit multiple times. According to the doctor, the injuries were consistent with the history he was given, and he made a medical diagnosis that John had been physically abused.

{¶ 14} The same day, Officer Keith Duncan of the Beavercreek Police Department was dispatched to DCH and spoke with the social worker and J.J. At that time, J.J. told Duncan that Middleton had a history of doing things she believed were very excessive in disciplining John. J.J. also told Duncan she had filed a report in the past about concerns

about spanking and markings and abuse to John. In addition, she showed Duncan past pictures of J.J. with bruising to his bottom that appeared excessive.

{¶ 15} Officer Duncan did not speak with John at the hospital, but did talk to him later that day at the police station. After taking pictures of John's buttocks, Duncan asked John to tell him his side of the story. At no time did John indicate that anyone had spanked him other than his father.

{¶ 16} That day, Duncan tried to reach Middleton at his home, but was unsuccessful. However, he was able to contact Middleton by phone. Middleton admitted spanking John on Thursday, July 5, 2018. Middleton said that he spanked John because he was "mean-mugging" Middleton's fiancée and was giving her aggressive looks and an attitude. When Duncan asked Middleton how many times he had spanked John on July 5, 2018, Middleton stated that he had spanked John 25 times. Tr. at pp. 140-141.

{¶ 17} Later that day, Middleton also gave the police a written statement, again acknowledging that he had spanked John. After Duncan's investigation ended, there was no evidence that anyone other than Middleton had injured John.

{¶ 18} As noted, a citation was filed in the municipal court on July 20, 2018. A jury trial was then held on April 24, 2019. During the trial, the State presented testimony from J.J., John, Officer Duncan, Dr. Drazner, and the DCH social worker. Middleton did not present any witnesses or evidence, but relied on "the affirmative defense that he was engaged in reasonable and proper measures to discipline a child." Tr. at p. 235. After considering the evidence, the jury found Middleton guilty of both domestic violence and child endangering. At sentencing, the State elected sentencing on child endangering,

and the court then sentenced Middleton to 180 days in jail, with 120 days suspended, supervised community control for a maximum of five years, a mental health assessment with follow-up treatment for anger management, parenting classes, and no contact directly or indirectly with John for five years.   This timely appeal followed.

## II.   Other Acts Evidence

{¶ 19} Middleton's First Assignment of Error states that:

Other Acts Evidence Pervaded the Trial and Was Improperly Admitted Because the Explicitly Stated Purpose Was to Demonstrate a Pattern of Bad Acts.

{¶ 20} Under this assignment of error, Middleton contends that the trial court failed to comply with Evid.R. 404(B) by allowing evidence of his prior bad acts.   In addition, Middleton argues that he was prejudiced because this evidence convinced the jury that he was a bad, violent father.   Middleton further contends that if the prior acts evidence is excised, it removes much of the history the social worker and physician referenced in their expert testimony on child abuse, and also casts doubts on J.J.'s credibility, given that she was embroiled in a bitter custody battle with Middleton.

{¶ 21} We review admission of other acts evidence for abuse of discretion, and "should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice."   *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 62.   *Accord State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 110.   Consequently, "our inquiry is confined to determining whether the trial court acted unreasonably, arbitrarily, or unconscionably in deciding the evidentiary

issues * * *." *Conway* at ¶ 62.

**{¶ 22}** Typically, "most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

**{¶ 23}** Regarding "other acts" evidence, Evid.R. 404(B) provides that:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**{¶ 24}** R.C. 2945.59 further states:

In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

**{¶ 25}** Evid.R. 404(B) "is in accord with R.C. 2945.59," and both the rule and statute adopt the common law to "preclude admission of other acts evidence to prove a

character trait in order to demonstrate conduct in conformity with that trait * * *." (Citations omitted.) *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 16. Unlike R.C. 2945.59, however, Evid.R. 404(B) "contains no reference to materiality." *Id.* at ¶ 17. "Rather, [Evid.R. 404(B)] precludes the admission of evidence of crimes, wrongs, or acts offered to prove the character of an accused in order to demonstrate conforming conduct, and it affords the trial court discretion to admit evidence of other crimes, wrongs, or acts for 'other purposes,' including, but not limited to, those set forth in the rule. Hence, the rule affords broad discretion to the trial judge regarding the admission of other acts evidence." *Id.*

{¶ 26} In *Williams*, the Supreme Court of Ohio prescribed a three-part analysis for considering other acts evidence. "The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R. 403." *Id.* at ¶ 20.

{¶ 27} There is no question that evidence about Middleton's prior punishment of John could be described as prior acts evidence. At trial, the State's justification for offering the evidence was based on the fact that Middleton "had been charged under the broad section of abuse of a child, which takes into account the totality of circumstances,

which would be the child's age, behavior leading up to the discipline, the response to noncorporal punishment and any other punishment in terms of establishing a pattern of abuse." Tr. at p. 4. The trial court agreed with the State and allowed the evidence. Tr. at p. 6.

{¶ 28} The State's argument is unavailing in the case before us, however, because the trial court lacked subject-matter jurisdiction over the child endangering charge. Middleton did not raise this point in the trial court or on appeal, but we are allowed to raise subject-matter jurisdiction on our own motion at any time. *Care Risk Retention Group v. Martin*, 191 Ohio App.3d 797, 2010-Ohio-6091, 947 N.E.2d 1214, ¶ 97 (2d Dist.), citing *State ex rel. White v. Cuyahoga Metro. Hous. Auth.*, 79 Ohio St.3d 543, 544, 684 N.E.2d 72 (1979). The reason is that "[s]ubject-matter jurisdiction may not be waived or bestowed upon a court by the parties to the case." *White* at 544. Notably, we have provided the parties with an opportunity to respond to this issue, and have considered their positions. In its response, the State has conceded the error.

{¶ 29} The child endangering charge was brought in municipal court under R.C. 2919.22(B)(1). However, R.C. 2151.23 confers exclusive original jurisdiction of such cases upon juvenile courts. Specifically, R.C. 2151.23 provides, in pertinent part, that:

(A) The *juvenile court has exclusive original jurisdiction under the Revised Code as follows*:

* * *

(6) To hear and determine all criminal cases in which an adult is charged with a violation of * * * *division (B)(1) of section 2919.22*, * * * provided the charge is not included in an indictment that also charges the

alleged adult offender with the commission of a felony arising out of the same actions that are the basis of the alleged violation of * * * division (B)(1) of section 2919.22 * * * of the Revised Code.

(Emphasis added.)   The part of R.C. 2151.23(A)(6) exempting a felony indictment from the juvenile court's exclusive jurisdiction does not apply here, as all the charges filed in the Fairborn Municipal Court were misdemeanors.

{¶ 30} We recently addressed a similar situation in *State v. Taylor*, 2d Dist. Montgomery No. 27731, 2018-Ohio-4048.    In that case, the defendant had been charged with two first-degree misdemeanor charges in Kettering Municipal Court – assault under R.C. 2903.13(A) and (C)(1), and child endangerment under R.C. 2919.22(B)(1) and (E)(2)(a).   *Id.* at ¶ 1.   On appeal, the defendant argued, based on R.C. 2151.23(A)(6), that the case should be remanded for dismissal because the trial court lacked jurisdiction to try her on the child endangering charge.   *Id.* at ¶ 20.   While the State agreed about the lack of jurisdiction, it argued the error was harmless because the defendant was found not guilty of the child endangering charge.   We disagreed, stating that:

> Pursuant to R.C. 2151.23(A)(6), the "juvenile court has exclusive original jurisdiction" to "hear and determine all criminal cases in which an adult is charged with a violation of * * * division (B)(1) of section 2919.22" of the Revised Code. The trial court, then, did not have jurisdiction to adjudicate the criminal complaint against Taylor for endangering a child. Given that a "judgment rendered by a court lacking subject matter jurisdiction is void ab initio," we sustain Taylor's second assignment of error.

*State v. Schooler*, 2d Dist. Greene No. 2003 CA 65, 2004-Ohio-2430, ¶ 16, citing *State v. Saxon*, 4th Dist. Highland No. 02 CA 15, 2003-Ohio-1199, ¶ 25.

We hold that the trial court received sufficient evidence to find Taylor guilty of assault under R.C. 2903.13(A), and further, we hold that the trial court did not lose its way in evaluating the evidence before it. The conviction of assault is affirmed. With respect to the charge of endangering a child under R.C. 2919.22(B)(1), we hold that the trial court did not have jurisdiction to try Taylor; therefore, the judgment related to endangering a child is void and is hereby vacated.

*Id.* at ¶ 20-21.

{¶ 31} The same reasoning applies here. As a result, the conviction of child endangering is void and must be vacated, and the charge cannot be used to justify the admission of other acts evidence. This is not the end of the analysis, however, because appellate courts may affirm judgments based on reasoning different from that of a trial court. "A decision that achieves the right result must be affirmed, even if the wrong reasoning is used to justify the decision, because an error in reasoning is not prejudicial." *John A. Becker Co. v. Jedson Eng., Inc.*, 2018-Ohio-3924, 121 N.E.3d 788, ¶ 19 (2d Dist.). *See also Englewood v. Turner*, 178 Ohio App.3d 179, 2008-Ohio-4637, 897 N.E.2d 213, ¶ 19 (2d Dist.).

{¶ 32} In this case, Middleton was also convicted of having violated R.C. 2919.25(A), which provides that "No person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2901.01(A)(3) defines "physical

harm" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." "R.C. 2919.25 does not require the state to prove that a victim has sustained actual injury since a defendant can be convicted of domestic violence for merely attempting to cause physical harm to a family member." *State v. Nielsen*, 66 Ohio App.3d 609, 612, 585 N.E.2d 906 (6th Dist.1990). Furthermore, "[a] slap or other physical contact that results in temporary redness is sufficient to establish 'physical harm' under the domestic-violence statute." *State v. Walters*, 2d Dist. Montgomery No. 22977, 2010-Ohio-304, ¶ 11. Here, obviously, there was more than a slap and temporary redness.

{¶ 33} In the trial court, Middleton did not dispute that he caused physical harm or attempted to cause physical harm to John. In fact, he admitted to having struck John 25 times, and there was no evidence of any other cause for the child's significant bruising. Instead, Middleton's affirmative defense at trial was that he exercised reasonable parental disciple, and the jury was instructed about that defense. Tr. at p. 235.[2] Middleton has also not argued on appeal that the conviction was based on insufficient evidence or was against the manifest weight of the evidence.

---

[2] In a decision issued on February 19, 2020, the Ohio Supreme Court resolved a conflict among districts by holding that reasonable parental discipline is an affirmative defense to a charge of domestic violence under R.C. 2919.25(A), rather than a component of the physical harm element of the crime, and that an accused has the burden of proving the defense. *State v. Faggs*, Ohio Slip Opinion No. 2020-Ohio-523, __ N.E.3d __, ¶ 1 and 6-7. This holding does not affect our decision about this assignment of error, because the issue was treated below as an affirmative defense. Furthermore, *Faggs* does not affect our own jurisprudence, because we have previously held that reasonable parental discipline is an affirmative defense. *See State v. Smith*, 2d Dist. Montgomery No. 28083, 2019-Ohio-2467, ¶ 25, fn.3, citing *State v Thompson*, 2d Dist. Miami No. 04CA30, 2006-Ohio-582, ¶ 33.

{¶ 34} Concerning the domestic violence statute, the Ohio Supreme Court has said that it does not prevent "a parent from properly disciplining his or her child." *State v. Suchomski*, 58 Ohio St.3d 74, 75, 567 N.E.2d 1304 (1991).[3] "Clearly parents are entitled to utilize disciplinary measures for their children, however, such discipline must not be of such gravity that it becomes unreasonable in light of the underlying cause." *State v. Ivey*, 98 Ohio App.3d 249, 258, 648 N.E.2d 519 (8th Dist.). Decisions about "whether particular conduct constitutes proper and reasonable parental discipline must be made from the totality of the circumstances in the case." *State v. Snyder*, 8th Dist. Cuyahoga No. 94755, 2011-Ohio-1062, ¶ 23, citing *State v. Adaranijo*, 153 Ohio App.3d 266, 2003-Ohio-3822, 792 N.E.2d 1139, ¶ 13-14 (1st Dist.)

{¶ 35} *Faggs* is consistent with the necessity to consider the totality of the circumstances. In that case, the Supreme Court of Ohio noted that "[f]or reasonable parental discipline to constitute an affirmative defense, it must first fit the definition of either an 'excuse' or 'justification.' " *Faggs* at ¶ 21, quoting R.C. 2901.05(D)(1)(b). The court further remarked that the "justification must be 'peculiarly within the knowledge of

---

[3] In *Faggs*, the Supreme Court of Ohio did stress that "[b]y supplying an overly legalistic and technical definition of the word 'injury' and linking that interpretation to the reasonableness of the discipline imposed," *Suchomski* left courts "wondering whether the reasonableness of the discipline went toward the government's burden to prove the physical-harm element or a defendant's establishment of an affirmative defense." *Faggs*, at ¶ 10. The court clarified that "[n]otably, nothing in either the text of Ohio's domestic-violence statute or the definition of 'physical harm' indicates that the state must prove * * * that the accused's actions while inflicting corporal punishment were unreasonable. In fact, by including the phrase, 'regardless of its gravity or duration,' to modify the scope of injuries encompassed by the term 'physical harm to persons,' R.C. 2901.01(A)(3), it seems that just the opposite is true: reasonableness or unreasonableness is not an element. Instead, to prove the crime of domestic violence, the state is only required to show that a defendant 'knowingly cause[d] or attempt[ed] to cause physical harm to a family or household member.' " *Id.* at ¶ 16.

the accused.' " *Id.* at ¶ 22, quoting R.C. 2901.05(D)(1)(b). In this regard, the court stressed that "[i]n cases involving corporal punishment, we conclude that it is ['peculiarly within the knowledge of the accused']. After all, only the charged parent or person acting in loco parentis knows and is able to describe the corrective intent behind the use of corporal punishment and why he or she felt it necessary to resort to such means, *including, for example, the child's behavioral history and responses to prior discipline.*" (Emphasis added.) *Id.*

{¶ 36} In the case before us, Middleton raised the affirmative defense of reasonable parental discipline, and, therefore, placed John's behavioral history and response to prior discipline at issue. Accordingly, the trial court did not err in allowing evidence concerning the discipline history, which was relevant and necessarily included Middleton's prior acts of discipline.

{¶ 37} Furthermore, even if this had been otherwise, any error would have been harmless. "Error in the admission of other act testimony is harmless when there is no reasonable possibility that the testimony contributed to the accused's conviction." *State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623 (1976), paragraph three of the syllabus, *vacated in part on other grounds*, 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154 (1978). "[A]n improper evidentiary admission under Evid.R. 404(B) may be deemed harmless error on review when, after the tainted evidence is removed, the remaining evidence is overwhelming." *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 32, citing *State v. Williams*, 6 Ohio St.3d 281, 290, 452 N.E.2d 1323 (1983). (Other citation omitted.) In considering the effect of erroneous admission, "an appellate court must consider both the impact of the offending evidence on the verdict and the strength

of the remaining evidence after the tainted evidence is removed from the record." *Id.* at ¶ 33.

{¶ 38} After considering the evidence remaining after the alleged tainted evidence is removed, we find the evidence of Middleton's guilt was overwhelming. There is simply no dispute that Middleton knowingly caused or attempted to cause physical harm to John. This was by his own admission to the police. As noted, no other evidence was presented to indicate that the child's injuries were caused by anything other than the force that Middleton used. The severity of the force was clearly disproportionate to the reason given for administering the punishment, i.e., that John had glared at Middleton's fiancée that day during a trip to a waterpark. Furthermore, regardless of the disciplinary issue involved, the punishment was clearly excessive and unreasonable.

{¶ 39} Accordingly, for the reasons stated, the First Assignment of Error is overruled.

### III. Reasonable Discipline as Affirmative Defense

{¶ 40} Middleton's Second Assignment of Error states that:

R.C. 2919.25(A) and R.C. 2919.22(B)(1) as Applied to Parental Discipline Relieve the State of Its Burden and Presum[e] Constitutionally Protected Conduct Is Criminal Conduct.

{¶ 41} Under this assignment of error, Middleton contends that requiring him to prove that his conduct was reasonable and proper corporal punishment improperly shifted the burden and created a presumption that any corporal punishment was inherently wrong. Middleton urges us instead to adopt the position that unreasonable parental

discipline was a component of physical harm that the State was required to prove.

{¶ 42} In view of our disposition of the jurisdictional issue, we will not consider this issue as it relates to R.C. 2919.22(B)(1). However, we will discuss R.C. 2919.25(A) and the issue of whether reasonable parental discipline is an affirmative defense or a component of the State's burden. The decision of the Supreme Court of Ohio in *Faggs* directly answers these questions.

{¶ 43} In *Faggs*, the court commented that it was being asked "to decide whether reasonable parental discipline is a component of the physical-harm element in Ohio's domestic-violence and assault statutes or whether it is an affirmative defense to a charge under those statutes." *Faggs*, Ohio Slip Opinion No. 2020-Ohio-523, __ N.E.3d __, at ¶ 1.

{¶ 44} In that case, the defendant, Faggs, was charged with both domestic violence under R.C. 2919.25(A) (a third-degree felony) and assault under R.C. 2903.13(A) (a first-degree misdemeanor). *Id.* at ¶ 2. The charges related to a beating that Faggs gave his son for acting out in school. *Id.* In the trial court, Faggs asserted that his conduct was based on " 'a reasonable and necessary exercise of parental discipline and corporal punishment.' " *Id.* at ¶ 3. After being convicted of both charges, Faggs appealed, arguing, as Middleton does here, that placing the burden on him to prove reasonable parental control "violated his constitutionally protected 'fundamental liberty interest in raising and controlling his or her child.' " *Id.* at ¶ 4, quoting *State v. Faggs*, 5th Dist. Delaware No. 17 CAA 10 0072, 2018-Ohio-3643, ¶ 28. The Fifth District Court of Appeals rejected that position and affirmed the trial court's judgment. *Faggs*, 5th Dist. Delaware No. 17 CAA 10 0072, 2018-Ohio-3643, at ¶ 32.

{¶ 45} Subsequently, the Supreme Court of Ohio accepted a certified conflict between the Fifth District's decision and the decision of the Seventh District Court of appeals in *State v. Rosa*, 2013-Ohio-5867, 6 N.E.3d 57 (7th Dist.), as well as Faggs's jurisdictional appeal, which raised the same substantive issue. *Faggs*, Ohio Slip Opinion No. 2020-Ohio-523, __ N.E.3d __, at ¶ 6-7. The certified issue was whether the State bore "the burden to prove unreasonable parental discipline" or whether "reasonable parental discipline" was in the nature of an affirmative defense." *Id*. at ¶ 7.

{¶ 46} As we mentioned, the court first discussed its prior decision in *Suchomski*, 58 Ohio St.3d 74, 567 N.E. 2d 1304, which had caused some confusion "[b]y supplying an overly legalistic and technical definition of the word 'injury' and linking that interpretation to the reasonableness of the discipline imposed," which left courts "wondering whether the reasonableness of the discipline went toward the government's burden to prove the physical-harm element or a defendant's establishment of an affirmative defense." *Faggs* at ¶ 10. In this vein, the court observed that many Ohio appellate districts had classified reasonable parental discipline as an affirmative defense, but the Seventh District had held otherwise by finding that under *Suchomski*, reasonableness of corporal discipline was part of analyzing R.C. 2919.25(A)'s physical harm element. *Id*. at ¶ 12.

{¶ 47} Regarding R.C. 2919.25(A), the Supreme Court of Ohio found that R.C. 2919.25(A) is unambiguous and that "nothing in either the text of Ohio's domestic-violence statutes or the definition of 'physical harm' indicates that the State must prove * * * that the accused's actions while inflicting corporal punishment were unreasonable." *Id*. at ¶ 15-16. As we previously noted, the court went on to state that:

In fact, by including the phrase, "regardless of its gravity or duration," to modify the scope of injuries encompassed by the term "physical harm to persons," R.C. 2901.01(A)(3), it seems that just the opposite is true: reasonableness or unreasonableness is not an element. Instead, to prove the crime of domestic violence, the state is only required to show that a defendant "knowingly cause[d] or attempt[ed] to cause physical harm to a family or household member." We therefore conclude that proof of unreasonable parental discipline is not a component of the physical-harm element of R.C. 2919.25(A).

*Faggs*, Ohio Slip Opinion No. 2020-Ohio-523, __ N.E.3d __, at ¶ 16.

**{¶ 48}** After making these observations, the court found that reasonable parental discipline met all the elements for an affirmative defense under R.C. 2901.05(D)(1)(b): (1) it is a "justification" because it makes "otherwise unlawful conduct lawful when there is a sufficient reason for the defendant's actions"; (2) the justification is " 'peculiarly within' " the accused's knowledge because only the charged person "knows and is able to describe the corrective intent behind the use of corporal punishment and why he or she felt it necessary to resort to such means, including, for example, the child's behavioral history and responses to prior discipline"; and (3) the accused can fairly be asked "to introduce evidence in the form of expert-witness testimony, lay-witness testimony, or his or her own testimony regarding the factors and surrounding circumstances discussed above and why the level of discipline was justified." *Id.* at ¶ 21-23.

**{¶ 49}** Finally, the court addressed the "due process" issue, which is the issue Middleton presents, i.e., "that treating reasonable parental discipline as an affirmative

defense violates a defendant's right to due process by unconstitutionally placing the burden of proof on the defendant." *Id.* at ¶ 25. In addressing this point, the court noted various decisions of its own, as well as those of United States Supreme Court, which had held such allocations of burden of proof constitutional. *Id.* at ¶ 27, citing *State v. Ireland*, 155 Ohio St.3d 287, 2018-Ohio-4494, 121 N.E.3d 285, ¶ 40; *Patterson v. New York*, 432 U.S. 197, 210, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); and *Martin v. Ohio*, 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987), *aff'g State v. Martin*, 21 Ohio St.3d 91, 94, 488 N.E.2d 166 (1986).

{¶ 50} Based on the General Assembly's choice about the burden of proof and the extensive precedent, which suggested the legislature's choice comports with due process, the Supreme Court of Ohio held that requiring defendants "to prove the affirmative defense of reasonable parental discipline by a preponderance of the evidence" is constitutional. *Faggs*, Ohio Slip Opinion No. 2020-Ohio-523, __ N.E.3d __, at ¶ 28.

{¶ 51} Accordingly, in light of the Supreme Court of Ohio's recent decision in *Faggs*, the Second Assignment of Error has no merit and is overruled.


IV. Conclusion

{¶ 52} Because the trial court lacked subject-matter jurisdiction with regard to the child endangering charge pursuant to R.C. 2151.23(A)(6), the conviction for child endangering is void and is vacated. The domestic violence conviction, however, is affirmed. Because the trial court merged the domestic violence charge into the child endangering charge, this case must be remanded for a new sentencing hearing on the domestic violence conviction.

. . . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies sent to:

Michael A. Mayer
Benjamin W. Ellis
Hon. Beth W. Cappelli