[Cite as *Hamilton v. Purvis*, 2018-Ohio-2881.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO/CITY OF HAMILTON, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2017-09-134 |
| | : | O P I N I O N |
| - vs - | | 7/23/2018 |
| | : | |
| DAVID E. PURVIS, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM HAMILTON MUNICIPAL COURT
Case No. 17CRB02000-A

Neal D. Schuett, Hamilton City Prosecutor, 345 High Street, Hamilton, Ohio 45011, for plaintiff-appellee

Christopher P. Frederick, 300 High Street, Suite 550, Hamilton, Ohio 45011, for defendant-appellant

**HENDRICKSON, J.**

{¶ 1} Defendant-appellant, David E. Purvis, appeals from his conviction in the Hamilton Municipal Court for domestic violence. For the reasons set forth below, we affirm his conviction.

{¶ 2} Following an incident that occurred between appellant and his 14-year-old daughter, E.P., at E.P.'s friend's home in New Miami, Ohio on May 13, 2017, appellant was

arrested and charged with one count of domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree. Appellant pled not guilty to the charge and the matter proceeded to a bench trial before a magistrate.

{¶ 3} At trial, the state presented testimony from E.P., New Miami Police Officer Joseph Snyder, and Matthias Jones, an eyewitness to the incident. E.P. testified she did not have permission to be at her friend's house on May 13, 2017, and her parents had demanded that she leave. E.P. refused and appellant and his wife went to E.P.'s friend's house to escort E.P. home.

{¶ 4} E.P. testified that once appellant arrived, he grabbed her by the back of the neck "really hard" and started to walk her towards the door. E.P. did not like being forced out of the house and shrugged her shoulders to try to get appellant to release her. Appellant, still holding E.P. by the neck, responded to E.P.'s efforts by hitting her in the mouth. E.P. could not recall which hand appellant used to hit her in the mouth but stated the hit "felt more [like] a punch than a slap." E.P. did not suffer any bruising or cuts to her mouth, but she claimed her face was swollen the following morning. She did not, however, take any photographs of her swollen face.

{¶ 5} After appellant struck E.P. in the mouth, he continued to force E.P. out of her friend's home. Once E.P. was outside, appellant attempted to push her into his vehicle. E.P. resisted and appellant and his wife, E.P.'s mother, held E.P. against the side of the car so that she could not get away. While appellant attempted to force E.P. into his vehicle, E.P.'s friend's stepfather, Jones, called 9-1-1 to report the incident. After officers arrived on the scene, E.P. spoke with an officer about appellant hitting her in the mouth.

{¶ 6} Jones testified he was present when appellant tried to force E.P. out of his home. Jones observed appellant grab E.P. and try to shove her out the door. He also saw appellant "haul off and punch" E.P. with his closed, right fist. Jones testified that "no child

- 2 -

should be hit like that," and he called the police to report appellant's actions.

{¶ 7} Officer Snyder responded to Jones' home around 11:00 p.m. after receiving notice of the domestic dispute. When he arrived on scene, he observed appellant, E.P., and E.P.'s mother in Jones' driveway near a vehicle. Appellant had his arms around E.P. and appeared to be restraining her. Snyder instructed appellant to release E.P. and then spoke to appellant, E.P., and Jones.

{¶ 8} During Snyder's conversation with appellant, appellant stated that E.P. struck him when he was trying to get her to leave Jones' house. Appellant also told Snyder that he "smacked [E.P.] with an open hand" and that he did so because "he was allowed to discipline his * * * daughter." Snyder then spoke with a hysterical E.P. and obtained her version of events.

{¶ 9} Snyder testified that as someone who deals with domestic violence calls on a "regular basis," he is familiar with what a person looks like after a person has been punched in the face, and he did not see any marks on E.P. that were consistent with being punched in the face. As Snyder did not observe any redness or visible injuries to E.P.'s face, no photographs were taken at the scene. Nonetheless, based on Jones' and E.P.'s statements, Snyder arrested appellant for domestic violence.

{¶ 10} Following Snyder's testimony, defense counsel moved for acquittal pursuant to Crim.R. 29. His motion was denied, and appellant presented testimony from E.P.'s mother and grandmother on behalf of his defense. Mother testified that when she and appellant arrived at Jones' residence to take E.P. home, E.P. used foul language and refused to leave. When appellant put his hand behind E.P.'s head to usher her out the house, E.P. "started fighting him and she cussed and then she threw her hand up and hit him." Mother then saw appellant "smack" E.P. with an open hand. Mother opined that the hit "wasn't anything major" and was an appropriate form of discipline. Mother believed the hit "was warranted"

given E.P.'s actions that evening and her history of unruly behavior, which had required Mother to call the police on E.P. "several times" in the past.

{¶ 11} After the incident, E.P. stayed at her grandmother's home. Grandmother testified that she did not see any marks or swelling to E.P.'s face in the days that followed the May 13, 2017 incident.

{¶ 12} After considering the forgoing testimony, the magistrate found appellant guilty of domestic violence. Appellant was sentenced to 90 days in jail, with 88 days suspended and jail-time credit for two days, and two years of nonreporting community control. He was also ordered to pay a fine of $100 and court costs.

{¶ 13} The magistrate's decision was filed on July 25, 2017. Appellant did not file objections and the trial court adopted the magistrate's decision. Appellant timely appealed his conviction, raising the following as his sole assignment of error:

{¶ 14} [APPELLANT'S] CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 15} In his sole assignment of error, appellant argues his conviction for domestic violence should be reversed as it is against the manifest weight of the evidence. Appellant contends the weight of the evidence demonstrates he did not punch his daughter in the face but, rather, properly disciplined his daughter when he smacked her in the face with his open palm.

{¶ 16} We must first determine whether appellant's assignment of error is properly before this court. As this was a bench trial held before a magistrate, the provisions set forth in Crim.R. 19 apply. Pursuant to Crim.R. 19(3)(D)(B)(iv), a party forfeits appellate review of an issue, except for a claim of plain error, unless the party files objections to the magistrate's decision within 14 days of its issuance. This rule, however, is affected when a magistrate's decision does not comply with the requirements set forth in Crim.R. 19(D)(3)(a)(iii).

{¶ 17} Crim.R. 19(D)(3)(a)(iii) provides as follows:

> A magistrate's decision shall be in writing, identified as a magistrate's decision in the caption, signed by the magistrate, filed with the clerk, and served by the clerk on all parties or their attorneys no later than three days after the decision is filed. *A magistrate's decision shall indicate conspicuously that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Crim.R. 19(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Crim.R. 19(D)(3)(b).*

(Emphasis added.) The purpose of the procedures set forth in in Crim.R. 19(D) is to afford the parties with a meaningful opportunity to file objections to the magistrate's decision. *State v. Wheeler*, 2d Dist. Montgomery No. 26702, 2016-Ohio-2964, ¶ 10. The "conspicuous" notice requirement of Crim.R. 19(D)(3)(a)(iii) "serves to warn the parties of the consequences of failing to file objections." *Id.*

{¶ 18} In the present case, the magistrate's decision failed to comply with Crim.R. 19(D)(3)(a)(iii), as it did not provide notice to the parties that the failure to object to the decision would forfeit all but plain error on appeal. This court has not previously addressed the consequences that result from the failure to provide the notice required by Crim.R. 19(D)(3)(a)(iii). However, as the language of Crim.R. 19(D)(3)(a)(iii) mirrors the language of Civ.R. 53(D)(3)(a)(iii) and Juv.R. 40(D)(3)(a)(iii), it is appropriate to rely on this court's precedents in applying those analogous provisions. *See Wheeler* at ¶ 9, fn. 1; *State v. Masalko*, 9th Dist. Wayne No. 15AP0011, 2015-Ohio-5179, ¶ 5. This court has previously determined that where a magistrate's decision fails to comply with the requirements of Civ.R. 53(D)(3)(a)(iii) or Juv.R. 40(D)(3)(a)(iii), a party is not precluded on appeal from assigning as error the trial court's adoption of the magistrate's findings of fact and conclusions of law. *In re Estate of Molitor*, 12th Dist. Brown No. CA2012-06-013, 2013-Ohio-525, ¶ 15; *Chibinda v. Depositors Ins.*, 12th Dist. Butler No. CA2010-09-254, 2011-Ohio-2597, ¶ 37; *In re W.C.*,

12th Dist. Preble No. CA2012-05-007, 2013-Ohio-153, ¶ 13-15. The same remedy is appropriate for a magistrate's failure to comply with Crim.R. 19(D)(3)(a)(iii). Accordingly, as the trial court failed to comply with the requirements of Crim.R. 19(D)(3)(a)(iii), we conclude that we are not precluded from reviewing appellant's assigned error challenging the weight of the evidence supporting his conviction.

{¶ 19} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. An appellate court will overturn a conviction due to the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶ 20} Appellant was convicted of domestic violence in violation of R.C. 2919.25(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Pursuant to R.C. 2901.22(B), "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature."

{¶ 21} Appellant contends "the evidence weigh[s] heavily in favor of acquittal" because he demonstrated he was properly and reasonably disciplining E.P. when he hit her in the face with his open palm. "[T]he domestic violence statute does not prohibit a parent

from properly disciplining his or her child." *State v. Sellers*, 12th Dist. Butler No. CA2011-05-083, 2012-Ohio-676, ¶ 15, citing *State v. Suchomski*, 58 Ohio St.3d 74, 75 (1991). "'[A] parent may use physical punishment as a method of discipline without violating the domestic violence statute as long as the discipline is proper and reasonable under the circumstances.'" *Id.*, quoting *State v. Thompson*, 2d Dist. Miami No. 04CA30, 2006-Ohio-582, ¶ 29. "Whether any particular conduct constitutes proper and reasonable parental discipline is a question that must be determined from the totality of all the relevant facts and circumstances." *Thompson* at ¶ 31. In analyzing the totality of the circumstances, a court should consider the child's age, the child's behavior leading up to the discipline, the child's response to prior noncorporal punishment, the location and severity of the punishment, and the parent's state of mind while administering the punishment. *State v. Zielinski*, 12th Dist. Warren No. CA2010-12-121, 2011-Ohio-6535, ¶ 25. The burden is on the defendant to establish parental discipline as an affirmative defense. *Sellers* at ¶ 15.

{¶ 22} Although testimony presented at trial established that 14-year-old E.P. had a history of unruly behavior, and on the date of the incident, was disobedient and uncooperative when she ignored her parents' repeated instructions to leave her friend's home, there was contradictory evidence presented regarding the severity of the punishment and appellant's state of mind when administering the punishment. The magistrate was presented with two different versions of events at trial. E.P. testified appellant hit her in the mouth and that the hit "felt more [like] a punch than a slap." Jones testified he witnessed appellant "haul off and punch" E.P. in the face with his closed, right fist. Jones felt that "no child should be hit like that" and neither he nor E.P. recalled appellant discussing punishment with E.P. before striking her in the face. Mother, on the other hand, testified that appellant used his open hand to "smack" E.P. in the face after E.P. struck appellant. Mother claimed the smack "wasn't anything major" and was an appropriate form of discipline.

{¶ 23} "It is well-established that when conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17. When there is a conflict in the testimony of witnesses, it is for the trier of fact to determine the weight and credibility to be given to such evidence. *State v. Marcum*, 12th Dist. Butler No. CA2017-05-057, 2018-Ohio-1009, ¶ 31, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Having heard the different versions of events, the magistrate was in the best position to observe and access the witnesses' credibility. *State v. Davis*, 12th Dist. Butler No. CA2017-04-049, 2017-Ohio-8535, ¶ 28. The magistrate clearly found Jones' testimony about the punch to E.P.'s face credible, stating:

> [T]he question is whether or not there was a punch or not. In which, everybody kind of agrees is not reasonable. And * * * you know what? I believe Matthias [Jones] in this case. I believe it was a punch and I don't know why he would say that if it wasn't true. I mean, it just you know, the way he testified is, it wasn't right. It took him by surprise that that happened and I believe him and I believe his testimony so I'm going to make a guilty finding.

{¶ 24} Based on the evidence presented at trial, we find that appellant's conviction for domestic violence was not against the manifest weight of the evidence. The court was entitled to find beyond a reasonable doubt that appellant knowingly caused physical harm to his teenage daughter when he struck her in the mouth with a closed fist. The court was also entitled to find that a closed fist punch to the face was not proper and reasonable parental discipline.

{¶ 25} Appellant's sole assignment of error is overruled.

{¶ 26} Judgment affirmed.

S. POWELL, P.J., and RINGLAND, J., concur.