[Cite as *Strongsville v. Henry*, 2023-Ohio-1891.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF STRONGSVILLE,  :

    Plaintiff-Appellee,  :

                             No. 111913

    v.  :

RICHARD T. HENRY,  :

    Defendant-Appellant.  :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** VACATED AND REMANDED
**RELEASED AND JOURNALIZED:** June 8, 2023

---

Criminal Appeal from the Berea Municipal Court
Case No. 21CRB00483-1

---

### *Appearances:*

John T. Castele, City of Strongsville Prosecutor, *for appellee*.

Cullen Sweeney, Cuyahoga County Public Defender, and Michael V. Wilhelm, Assistant Public Defender, *for appellant*.

EILEEN A. GALLAGHER, J.:

{¶ 1} Defendant-appellant Richard Henry appeals his conviction for attempted petty theft following a bench trial. He contends that his conviction was

not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶ 2} For the reasons that follow, we vacate Henry's conviction and remand for further proceedings.

**Factual Background and Procedural History**

{¶ 3} Henry was charged with theft by deception in violation of Strongsville Codified Ordinances 642.02(a)(3), a first-degree misdemeanor, based on his alleged role in the attempted fraudulent return of a television valued at approximately $800 to a Walmart store on March 17, 2021. Henry appeared before the Strongsville Mayor's Court and pled not guilty to the charge and the case was transferred to the Berea Municipal Court. Henry's codefendant, Bethany Perkins, was similarly charged in connection with the incident.

{¶ 4} The parties consented, on the record, to having the matter heard by a magistrate, and the case proceeded to trial before a magistrate on May 18, 2022. A summary of the relevant evidence presented at trial follows.

{¶ 5} Samantha Price, a Walmart asset protection employee, testified that in late February 2021 she was working at Walmart's Strongsville store when she was made aware of a problematic return. Someone returned a television to the Strongsville store on February 24, 2021. When the return was accepted, the box was not opened to confirm its contents. When the box was opened the following day, it was discovered that the television inside the box was broken and was a different brand, size and model than what was indicated on the box.

{¶ 6} Price identified a still image obtained from Walmart's surveillance footage that showed Perkins "wheeling that TV box into [the] Strongsville [store]" and returning the television on February 24, 2021. Based on a screenshot of an "Electronic Journal Display Screen" documenting the return of the television, Price stated that Perkins received $1,077.84 in cash for the television she returned on February 24, 2021 (the "first television").

{¶ 7} Price testified that she obtained the serial number from the box of the returned television and looked it up in Walmart's inventory system to determine the date, time and location of the purchase of that television and learned that it had been purchased at the North Olmsted store two days earlier. Price then contacted the North Olmsted store to see if they had surveillance footage of the purchase of the television. Price identified still images of surveillance footage depicting a male purchasing the television at the North Olmsted store on February 22, 2021. The man's face was not visible in the images and Perkins stated that she could not identify the man who purchased the television on February 22, 2021. Perkins also identified a still image of a red Ford Fusion parked outside the North Olmsted store on February 22, 2021 at the time of the purchase.

{¶ 8} On March 17, 2021, Perkins attempted to return another television (the "second television") at Walmart's Strongsville store. Price testified that she observed Perkins enter the store with a television and became suspicious when she saw a red Ford Fusion (which she recognized from the surveillance footage she had obtained from the North Olmsted store in connection with the prior incident)

parked in the fire lane outside the store's "grocery doors." Price stated that she reviewed the Strongsville store's surveillance footage. The surveillance footage showed Henry placing the television box on a cart for Perkins, who was pregnant. Perkins then "wheeled" the television into the store.

{¶ 9} Price stated that, by the time she reviewed the surveillance footage, Perkins was "already in the middle of the return," so she called the Strongsville police.

{¶ 10} As before, Price obtained the serial number from the box of the returned television and looked it up in Walmart's inventory system. She determined that the television had been purchased the previous day, March 16, 2021, at the North Olmsted store. Price testified that she opened the box Perkins was attempting to return to see if the television inside the box was the same television that had been purchased in North Olmsted the previous day. It was not. The television inside was broken, and the brand, size, model and serial number of the television did not correspond with the box in which it had been returned. The city introduced copies of photographs of the box and the returned television, a copy of the purchase receipt for the television — a "SAM 65 4K TV" purchased for $807.84 — and still images of surveillance footage from the North Olmsted store showing Perkins and another individual purchasing that television at the North Olmsted store on March 16, 2021.

{¶ 11} Price testified that Perkins received "cash back" from the Strongsville store for the return of the second television. However, the city did not introduce a

return receipt or other documentation showing that Perkins had, in fact, received cash back for the second return.

{¶ 12} On cross-examination, Price acknowledged that she had not examined the contents of the boxes prior to the purchase of the televisions on February 22, 2021 and March 16, 2021 and could not state with certainty what was in the boxes at the time those televisions were purchased. She testified that when Walmart accepts a return of a television, the television is placed in a claims area, where the box is opened and the television is checked. She stated that broken televisions are not placed back on the shelf and sold as new.

{¶ 13} Jonathan Hayes, a patrol officer with the Strongsville Police Department, responded to Price's call regarding an alleged fraudulent return at the Strongsville Walmart on March 17, 2021. Hayes testified that when he arrived at the store, Perkins was in the customer service area with the second television. Price explained what happened with the prior fraudulent television return and expressed her concern that another fraudulent television return could be in progress based on (1) Perkins' attempted return of the second television and (2) the presence of the red Ford Fusion (which had been observed in connection with the purchase of the prior television that had allegedly been fraudulently returned) parked outside the Strongsville store.

{¶ 14} Hayes testified that he located the red Ford Fusion in the parking lot and found Henry sitting inside the vehicle. At Hayes' request, a dispatcher looked

up the license plate number for the vehicle and determined that Henry was the registered owner of the vehicle.

{¶ 15} Hayes stated that he explained to Henry why he was there and escorted Henry inside the store while he continued to investigate the matter. Hayes testified that he and a Walmart employee opened the television box Perkins had been attempting to return and discovered that the television inside the box was a different television from that depicted on the box, i.e., a different brand of television and a "much older, broken television." Hayes indicated that it also appeared as if the television's serial number had been "tampered with." He stated that it looked like the sticker containing the serial number from the television that had been purchased (i.e., the television that corresponded with the box) had been removed from that television and "switched" to the older, broken television, "placed over top of the old serial number." Hayes testified that he issued citations to Henry and Perkins in connection with the incident.

{¶ 16} On cross-examination, Hayes acknowledged that he did not observe the television purchases on February 22, 2021 and March 16, 2021 and that he had not looked inside the boxes before the televisions were purchased and could not state with certainty whether the televisions that were returned on February 24, 2021 and March 17, 2021 were different from the televisions that were in the boxes at the time of their purchase.

{¶ 17} Perkins and Henry testified in their defense. Perkins testified that she and Henry had been together for seven years. She admitted that she returned a

television to the Strongsville store on February 24, 2021 which Henry had purchased on February 22, 2021. Perkins testified that she was not with Henry when he purchased that television and stated that she returned the television because "I decided I didn't want that TV * * * for the apartment I had purchased it for." Perkins testified that she never opened the box and was unaware of the contents of the box before she returned the television to the Strongsville store. She stated that Henry was not present when she returned the first television to the Strongsville store on February 24, 2021.

{¶ 18} Perkins also admitted purchasing a second television from the North Olmsted store on March 16, 2021. She testified that she purchased the second television because "I had decided I wanted to put a TV in my bedroom" and that a friend, Melissa Bailey, was with her when she purchased the second television. Perkins stated that she attempted to return the second television at the Strongsville store on March 17, 2021 because she had found the same television cheaper on Facebook Marketplace.

{¶ 19} Perkins testified that she drove Henry's car — a red Ford Fusion — to the Strongsville store to return the second television on March 17, 2021. She stated that Henry was with her but remained in the car when she went inside to attempt the return. Perkins testified that she never opened the box and was unaware of the contents of the box before she attempted to return the second television at the Strongsville store. Perkins stated that she never completed the return of the second

television and she did not receive any compensation for the return of the second television.

{¶ 20} On cross-examination, Perkins acknowledged that she "[o]ccasionally" posted televisions for sale on Facebook Marketplace but denied that she had ever sold a stolen item on Facebook Marketplace.

{¶ 21} Henry testified that he was not present when Perkins purchased the second television on March 16, 2021 and that her friend, Melissa, accompanied her. Henry stated that he and Perkins never opened the box containing the second television and that he was unaware of the contents of the box before Perkins attempted to return the second television on March 17, 2021.

{¶ 22} Henry testified that when Perkins came home after purchasing the second television, she told him that she wanted to return it. He stated that he did not question her decision and "just followed her to the store." He testified that Perkins drove his car to the store and that he remained in the car until police officers "came out and got me." He stated that he could not recall whether he helped Perkins place the television on a cart when she was returning the television.

{¶ 23} Henry testified that when the police officers brought him inside the store, he looked at the television that had been returned and saw that the serial numbers on the television that had been returned and the box matched. He stated that he showed this to a police officer who was then present.

{¶ 24} Henry testified that after the Strongsville store refused to accept the return of the second television, he and Perkins took the television to Walmart's

Lorain store and returned the second television there. He stated that the Lorain Walmart returned the television "as was" and refunded them the purchase price of the second television. Henry claimed that, at the Lorain store, he had someone "acknowledge it, examine it, and write a note, a statement stating that it was the right TV when we returned it." (This note was not introduced into evidence.)

{¶ 25} In its closing argument, the city argued that the purchases and returns of the two televisions were part of a course of conduct and that Henry was guilty of theft under a complicity theory, i.e., that he aided and abetted Perkins' fraudulent return of the second television by providing the transportation she used to get to the Strongsville store on March 17, 2021 and helping her load the television onto a cart so she could make the return. Henry's counsel argued that there was insufficient evidence to convict Henry of theft because he was not present when the second television was purchased on March 16, 2021, there was no evidence that what was in the box at the time of the return was different from what was in the box at the time of purchase and Henry's "mere presence" at the scene, i.e., remaining in the car when Perkins attempted the return of the second television on March 17, 2021, could not establish complicity in Perkins' alleged fraudulent return of the second television.

{¶ 26} After hearing the evidence and the closing arguments of counsel, the magistrate found Henry and Perkins guilty of attempted theft by deception. As related to Henry, the magistrate explained his verdict as follows:

The charge here under the complaint is theft by deception under Strongsville City Code 642.02. It's a first-degree misdemeanor. * * * I did not see any receipt or any evidence of cash being handed back to [Perkins]. There was some oral testimony of cash going — maybe being given back to her.

My further understanding is the television was returned — based on the testimony of the defendants, was returned to the defendants along with * * * a least a copy of the purchase receipt. * * * I do find that there's no direct evidence that they actually gained a benefit from the return of the TV on that particular day.

I do find, however, that there was an attempt to, by deception, to deceive the owner of property of Walmart on March 16th and March 17th with the return of the television with something that did not match the item itself. * * *

With respect to Defendant Richard T. Henry, I do find that your activities were aiding and abetting and also assisted in the attempted theft of those — of that refund of cash based on the receipt from the purchase back in North Olmsted. I, therefore, find you guilty of attempted petty theft, a second-degree misdemeanor, as a lesser included offense.

{¶ 27} On May 18, 2022, the magistrate issued a "journal entry" setting forth his verdict as follows: "Bench trial had. Defendant found guilty of attempted petty theft as lesser included offense ORC 2923.02 and 2913.02[.] Pass for sentencing for PSI." The journal entry was not captioned as a magistrate's decision and did not include the notification required under Crim.R. 19(D)(3)(a)(iii). On May 19, 2022, the trial court issued a journal entry "adopt[ing] such decision." The trial court's journal entry stated in full:

This cause came on for consideration on Magistrate * * * decision filed on 05/18/2022 entered herein:

Bench trial had. Defendant found guilty of attempted petty theft as lesser included offense ORC 2923.02 and 2913.02[.] Pass for sentencing for PSI.

Upon review, the Court hereby adopts such decision.

{¶ 28} The trial court thereafter sentenced Henry to ten days in jail (or community service in lieu of jail), two years of probation and a $100 fine plus costs.

{¶ 29} Henry appealed, raising the following two assignments of error for review:

> Assignment of Error No. 1:
> Mr. Henry's conviction was not supported by sufficient evidence.

> Assignment of Error No. 2:
> Mr. Henry's conviction is against the manifest weight of the evidence.

## Law and Analysis

{¶ 30} As an initial matter, we must first determine whether Henry's assignments of error are properly before this court. As this was a bench trial held before a magistrate, the provisions of Crim.R. 19 apply.

{¶ 31} Crim.R. 19(C)(1)(h) states: "To assist courts of record and pursuant to reference under Crim.R. 19(D)(1), magistrates are authorized, subject to the terms of the relevant reference, to * * * [c]onduct the trial of any misdemeanor case that will not be tried to a jury." *See also* Crim.R. 19(D)(1)(a) ("A court of record may, for one or more of the purposes described in Crim.R. 19(C)(1), refer a particular case or matter of a category of cases or matters to a magistrate by a specific or general order of reference or by a rule."). "If the offense charged is an offense for which imprisonment is a possible penalty, the matter may be referred only with unanimous consent of the parties in writing or on the record in open court." Crim.R. 19(C)(1)(h).

Here, the parties consented, on the record in open court, to a bench trial conducted by the magistrate.

{¶ 32} Where a matter is referred to a magistrate, the magistrate "shall prepare a magistrate's decision respecting [the] matter." Crim.R. 19(D)(3)(a)(i). A magistrate's decision "may be general unless findings of fact and conclusions of law are timely requested by a party or otherwise required by law." Crim.R. 19(D)(3)(a)(ii). A magistrate's decision "shall be in writing, identified as a magistrate's decision in the caption, signed by the magistrate, filed with the clerk, and served by the clerk on all parties or their attorneys no later than three days after the decision is filed." Crim.R. 19(D)(3)(a)(iii). The magistrate's decision shall also "indicate conspicuously that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Crim.R. 19(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Crim.R. 19(D)(3)(b)." *Id.* Objections to a magistrate's decision must be specific and must be filed in writing within 14 days of the filing of the decision. Crim.R. 19(D)(3)(b)(i)-(ii).

{¶ 33} The purpose of the procedures set forth in Crim.R. 19(D) is to afford the parties "'a meaningful opportunity to file objections to the magistrate's decision.'" *State v. Wheeler*, 2016-Ohio-2964, 65 N.E.3d 182, ¶ 10 (2d Dist.), quoting *Skydive Columbus Ohio, LLC v. Litter*, 10th Dist. Franklin No. 09AP-563, 2010-Ohio-3325, ¶ 6. Crim.R. 19(D)(3)(a)(iii)'s "conspicuous" notice requirement

"'serves to warn the parties of the consequences of failing to file objections.'" *Wheeler* at ¶ 10, quoting *Walters v. Lewis*, 7th Dist. Mahoning No. 15 MA 0135, 2016-Ohio-1064, ¶ 18.

{¶ 34} The magistrate's journal entry in this case did not comply with Crim.R. 19(D)(3)(a)(iii); it was not designated as a "magistrate's decision" and did not notify the parties of the effect of failing to timely file objections. However, the issue has not been raised by the parties below or on appeal.

{¶ 35} A magistrate's decision is not effective unless adopted by the trial court. Crim.R. 19(D)(4)(a). A trial court may adopt or reject a magistrate's decision in whole or in part, with or without modification. Crim.R. 19(D)(4)(b). If objections are timely filed to a magistrate's decision, the trial court must undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law. Crim.R. 19(D)(4)(d). Objections to a magistrate's factual findings must generally be supported by a transcript of the evidence. *See* Crim.R. 19(D)(3)(b)(iii).

{¶ 36} Pursuant to Crim.R. 19(D)(3)(b)(iv), a party forfeits appellate review of an issue, except for a claim of plain error, unless the party timely files objections to the magistrate's decision as to that issue. Crim.R. 19(D)(3)(b)(iv) ("Except for a claim of plain error, a party shall not assign on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Crim. R. 19(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Crim. R. 19(D)(3)(b).").

{¶ 37} Here, Henry did not file any objections to the "magistrate's decision." No transcript was filed in the case until the appeal. And Henry has not made a plain error argument on appeal.

{¶ 38} Further, pursuant to Crim.R. 19(D)(4)(c), if no timely objections are filed to a magistrate's decision, the trial court is not obliged to conduct an independent review and may adopt a magistrate's decision unless it determines that there is "an error of law or other defect evident on the face of the magistrate's decision." Here, the trial court adopted the "magistrate's decision" in whole, without modification. Because no objections were filed — timely or otherwise — the trial court was only required to determine that there was no error of law or other defect on the face of the magistrate's decision. Although it appears that there was at least one defect evident on the face of the journal entry (i.e., the lack of required notice under Crim.R. 19(D)(3)(a)(iii)), Henry has not raised this as error on appeal.

{¶ 39} Because the appellate court generally reviews the trial court's decision (and not the magistrate's decision), *see, e.g., State v. Lawson*, 9th Dist. Medina No. 16CA0081-M, 2018-Ohio-694, ¶ 15, and because there has been no claim here that the trial court erred in adopting the "magistrate's decision" based on "an error of law or other defect evident on the face of the magistrate's decision" (or based on some other procedural deficiency below), it could be said that there is nothing for this court to review. *See, e.g., State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 19 (observing that "'justice is far better served when it has the benefit of briefing, arguing, and lower court consideration before

making a final determination'" and that appellate courts are "not obligated to search the record or formulate legal arguments on behalf of the parties, because 'appellate courts do not sit as self-directed boards of legal inquiry and research, but [preside] essentially as arbiters of legal questions presented and argued by the parties before them'"), quoting *Sizemore v. Smith*, 6 Ohio St.3d 330, 333, 453 N.E.2d 632 (1983), fn. 2, and *Carducci v. Regan*, 714 F.2d 171, 177, 230 U.S. App. D.C. 80 (D.C.Cir.1983).

{¶ 40} Nevertheless, we recognize that where a magistrate's decision fails to comply with Crim.R. 19(D)(3)(a)(iii), "courts have employed varying remedies by examining the circumstances of each case to determine the remedy to be employed on appeal." *Parma v. Hardimon*, 8th Dist. Cuyahoga No. 110296, 2021-Ohio-4430, ¶ 10. Where prejudice occurs as a result of a failure to comply with Crim.R. 19(D)(3)(a)(iii), e.g., a party fails to file timely objections, appellate courts have generally either (1) remanded the case to the trial court so that the parties may have the opportunity to file objections to the magistrate's decision or (2) permitted the appellant to raise his or her arguments challenging the magistrate's decision for the first time on appeal. *See, e.g., Parma* at ¶ 10-11 (electing to vacate conviction and remanding matter to allow defendant an opportunity to file objections to the magistrate's decision accepting defendant's plea and recommending sentence); *State v. Purvis*, 2018-Ohio-2881, 117 N.E.3d 828, ¶ 18 (12th Dist.) (addressing assigned error challenging the manifest weight of the evidence); *Wheeler*, 2016-Ohio-2964, 65 N.E.3d 182, at ¶ 11-15 (concluding that "the waiver rule under Crim.R.

19(D)(3)(b)(iv) does not apply" and that defendant "may raise his arguments pertaining to the trial court's adoption of the magistrate's decision for the first time on appeal"); *State v. Masalko*, 9th Dist. Wayne No. 15AP0011, 2015-Ohio-5179, ¶ 5-7 (reversing trial court and remanding matter for the preparation and filing of a magistrate's decision that complies with Crim.R. 19 and to permit the parties an opportunity to file objections).

{¶ 41} Under the circumstances here, we elect to vacate Henry's conviction and remand the matter to the trial court so that (1) the magistrate can prepare and file a decision that complies with Crim.R. 19(D)(3)(a)(iii) and (2) the parties may then have the opportunity to file objections to the magistrate's decision.

{¶ 42} Judgment vacated and remanded.

It is ordered that appellant recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Berea Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., and
LISA B. FORBES, J., CONCUR